PEOPLE v GIBBS

PEOPLE v HENDERSON

Docket Nos. 306124 and 306127. Submitted February 7, 2013, at Lansing. Decided February 14, 2013, at 9:05 a.m. Leave to appeal sought.

Phillip C. Gibbs and Tyrell Henderson were tried together before separate juries in the Genesee Circuit Court on several counts arising out of an armed robbery at a store during which Henderson struck the owner's head with a gun. One jury convicted Gibbs of two counts of armed robbery, MCL 750.529; one count of unarmed robbery, MCL 750.530; and one count of conspiracy to commit armed robbery, MCL 750.157a and 750.529. The other jury convicted Henderson of three counts of armed robbery; one count of conspiracy to commit armed robbery; one count of assault with intent to rob while armed, MCL 750.89; and two charges related to firearms. The court, Judith A. Fullerton, J., sentenced both defendants, and they appealed separately, each raising constitutional and sentencing issues. The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. Gibbs was not entitled to automatic reversal and a new trial because the trial court had closed the courtroom during voir dire. Because Gibbs did not object at trial, his claim was subject to review under the plain-error standard applied to forfeited claims of constitutional error. To prevail under that standard, a defendant must establish (1) that the error occurred, (2) that the error was plain, (3) that it affected substantial rights, and (4) that it either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. Even if the trial court's closure of the courtroom during jury selection were found to be error, however, Gibbs failed to satisfy the fourth prong of the test because both parties engaged in a vigorous voir dire process, there were no objections to either party's peremptory challenges, and each party expressed satisfaction with the jury chosen. Moreover, the venire itself, consisting of members of the public, was present and guaranteed that the proceedings were subjected to a substantial degree of public review.

2. The prosecutor did not violate Gibbs's Fifth Amendment right to remain silent by using Gibbs's prearrest silence to impeach his testimony and referring to it during closing argument. Generally, a prosecutor may not comment on a defendant's silence in the face of accusation, but may comment on silence that occurred before any police contact. A prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version were true. If it would not have been natural for the defendant to contact the police (for example, when doing so might have resulted in self-incrimination), the prosecutor cannot properly comment on the defendant's failure. The prosecutor in this case referred only to prearrest silence. Moreover, because Gibbs maintained that he was under duress and that he did not know that Henderson was going to rob the store, it would have been natural for him to have contacted the police.

3. The trial court erred by assessing 2 points for prior record variable (PRV) 5 (prior misdemeanor convictions or misdemeanor juvenile adjudications), MCL 777.55, when it scored the sentencing guidelines for Gibbs. While Gibbs had a juvenile adjudication for a misdemeanor offense that he committed before the sentencing offense, the order of disposition for it was not entered until after he committed the sentencing offense and accordingly the adjudication did not constitute a prior misdemeanor juvenile adjudication under MCL 777.55(3)(b). Resentencing was not required, however, because a reduction of 2 points would not have changed Gibbs's PRV level.

4. The trial court properly assessed 5 points for PRV 6 (relationship to the criminal justice system), MCL 777.56, for Gibbs. Gibbs's prior juvenile adjudication supported the scoring of the variable because the phrase "criminal justice system" is not limited to adversarial criminal proceedings and includes a relationship with the juvenile justice system.

5. The trial court did not err by assessing 25 points for offense variable (OV) 13 (continuing pattern of criminal behavior), MCL 777.43, when it scored the sentencing guidelines for both Gibbs and Henderson. That score is required under MCL 777.43(1)(c) if the offense was part of a pattern of felonious activity involving three or more crimes against a person. Armed robbery and unarmed robbery are both classified in the sentencing guidelines as crimes against a person. Nothing in the statute prohibits a court scoring OV 13 from considering multiple convictions arising from the same incident.

6. Convicting Henderson of both armed robbery and assault with intent to rob while armed violated double jeopardy protections under the Fifth Amendment and Const 1963, art 1 § 15, specifically, the prohibition of multiple punishments for the same offense. Assault with intent to rob while armed is a lesser included offense of armed robbery, that is, a crime for which it is impossible to commit the greater offense without first having committed the lesser offense. Accordingly, it was necessary to vacate Henderson's assault conviction.

7. The trial court properly assessed 10 points for OV 3 (physical injury to a victim), MCL 777.33, for Henderson. That score is required under MCL 777.33(1)(d) and (3) if bodily injury requiring medical treatment occurred to a victim, regardless of the victim's success in obtaining treatment. Bodily injury includes anything that a victim would perceive under the circumstances as some unwanted physically damaging consequence and in this case included the injuries to the victim whom Henderson struck with the gun.

8. The trial court properly assessed 10 points for OV 4 (psychological injury to a victim), MCL 777.34, for Henderson. That score is required under MCL 777.34(1)(a) if serious psychological injury requiring professional treatment occurred to a victim. The fact that treatment had not been sought is not conclusive when determining whether the injury might require treatment. Depression and personality changes are sufficient to uphold the scoring of OV 4. A victim's statements about feeling angry, hurt, violated, and frightened, such as the victims' testimony in this case, support assessing 10 points.

9. The trial court did not err by assessing 10 points for OV 14 (offender's role), MCL 777.44, for Henderson. That score is required under MCL 777.44(1)(a) if the offender was a leader in a multiple-offender situation. The entire criminal transaction should be considered. Only Henderson had a gun, and he did most of the talking and gave orders to Gibbs. The testimony supported a finding that Henderson was the leader.

Conviction for assault with intent to rob while armed vacated in *Henderson*; convictions and sentences otherwise affirmed in *Gibbs* and *Henderson*.

1. CONSTITUTIONAL LAW — RIGHT TO REMAIN SILENT — PREARREST SILENCE — COMMENTS BY PROSECUTING ATTORNEY.

Under the Fifth Amendment, a criminal defendant has a right to remain silent; a prosecutor may not comment on a defendant's silence in the face of accusation, but may without violating the

right comment on silence that occurred before any police contact; a prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version were true, but if it would not have been natural for the defendant to contact the police (for example, when doing so might have resulted in self-incrimination), the prosecutor cannot properly comment on the defendant's failure.

2. SENTENCES — SENTENCING GUIDELINES — OFFENSE VARIABLE 13 — CONTINUING PATTERN OF CRIMINAL BEHAVIOR — MULTIPLE OFFENSES ARISING FROM SAME INCIDENT.

Offense variable 13 under the sentencing guidelines, MCL 777.43, is scored for a continuing pattern of criminal behavior); under MCL 777.43(1)(c), the sentencing court must assess 25 points if the sentencing offense was part of a pattern of felonious activity involving three or more crimes against a person; the statute does not prohibit consideration of multiple convictions arising from the same incident for scoring the variable.

3. CONSTITUTIONAL LAW — DOUBLE JEOPARDY — MULTIPLE PUNISHMENTS — LESSER INCLUDED OFFENSES — ARMED ROBBERY — ASSAULT WITH INTENT TO ROB WHILE ARMED.

Assault with intent to rob while armed is a lesser included offense of armed robbery; convicting a defendant of both armed robbery and assault with intent to rob while armed arising out of the same criminal episode violates the double jeopardy prohibition of multiple punishments for the same offense (US Const V; Const 1963, art 1 § 15; MCL 750.89, MCL 750.529).

*Bill Schuette*, Attorney General, *John J. Bursch*, Solicitor General, *David S. Leyton*, Prosecuting Attorney, and *Vikki Bayeh Haley*, Assistant Prosecuting Attorney, for the people in *Henderson*.

State Appellate Defender (by *Brandy Y. Robinson* and *Randy E. Davidson*) for Phillip C. Gibbs.

*Michael A. Faraone P.C.* (by *Michael A. Faraone*) for Tyrell Henderson.

Before: K. F. KELLY, P.J., and MARKEY and FORT HOOD, JJ.

PER CURIAM. In Docket No. 306124, defendant, Phillip Charles Gibbs, was convicted by a jury of two counts of armed robbery, MCL 750.529, one count of unarmed robbery, MCL 750.530, and one count of conspiracy to commit armed robbery, MCL 750.157a and 750.529. Gibbs was sentenced to 17½ to 30 years' imprisonment for each count of armed robbery, 100 months to 15 years' imprisonment for the unarmed robbery conviction, and 17½ to 30 years' imprisonment for the conviction of conspiracy to commit armed robbery.

In Docket No. 306127, defendant, Tyrell Henderson, was convicted by a jury of three counts of armed robbery, MCL 750.529, one count of conspiracy to commit armed robbery, MCL 750.157a and 750.529, one count of assault with intent to rob while armed, MCL 750.89, one count of carrying a concealed weapon, MCL 750.227, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Henderson was sentenced to 225 months to 40 years' imprisonment for each count of armed robbery, 225 months to 40 years' imprisonment for the conviction of conspiracy to commit armed robbery, 225 months to 40 years' imprisonment for the conviction of assault with intent to rob while armed, 24 to 60 months' imprisonment for the conviction of carrying a concealed weapon, and 2 years' imprisonment for the felony-firearm conviction.

Defendants were tried together in front of separate juries. They both appeal as of right.[1] We vacate Henderson's conviction for assault with intent to rob while armed, but otherwise affirm both defendants' convictions and sentences.

---

[1] On September 14, 2011, Henderson filed a claim of appeal, and on September 16, 2011, Gibbs filed his claim of appeal. On December 7, 2011, this Court entered an order consolidating the appeals. *People v Gibbs*, unpublished order of the Court of Appeals, entered December 7, 2011 (Docket Nos. 306124 and 306127).

This case arises from an armed robbery that occurred at a store called Wholesale 4 U in Flint, Michigan, on October 26, 2010. Nancy Anagnostopoulos and her husband, Costas Anagnostopoulos, owned the store and were present at the time of the robbery. Also present was employee Jeremy Kassing. Defendants had been to the store together numerous times that day. Originally, they had hoped to pawn some jewelry. After finding out that the jewelry had no value, Henderson purchased a video game. He later decided to return it. Defendants entered the store and told Costas that the game did not work. As Costas attempted to help determine what was wrong with the game, Henderson struck him in the head with a gun. Gibbs, who was not personally armed during the incident, approached Nancy and removed her necklaces and ring. He took her identification and purse. Gibbs also took an iPod from the store, as well as a number of laptop computers. In the meantime, Henderson took Costas's jewelry, wallet, and money. He ordered Costas to open the store's register and then took Costas to a back room where a safe was kept. Part of Costas's ear was cut off as a result of the blow he received, and he received stitches for the injury. Kassing's wallet was also taken. A subsequent search of the home Gibbs shared with his mother uncovered a sandwich bag containing jewelry, a sandwich bag containing papers and the identifications of the three victims, and several watches identified as those taken from the store.

In separate police interviews, both defendants admitted their involvement. However, Gibbs told the officer that his involvement was involuntary. Gibbs believed

that they were going to the store to return the video game and had no idea that Henderson was planning a robbery. Gibbs stated that Henderson ordered him to take the victims' belongings and other store items. Gibbs testified at trial that he complied only because he did not want anything to happen to him.

The juries convicted defendants and they were sentenced as outlined previously.

### B. GIBBS'S MOTION FOR REMAND

On May 23, 2012, Gibbs filed a motion to remand with this Court in order to make two objections to his sentencing, develop his argument that he was denied the right to a public trial, and, alternatively, argue that his counsel was ineffective. We granted Gibbs's motion to remand and remanded for Gibbs to file a motion for resentencing regarding prior record variable (PRV) 5 and PRV 6 and to file a motion for a new trial. *People v Gibbs*, unpublished order of the Court of Appeals, entered June 20, 2012 (Docket No. 306124). We ordered the trial court to hold an evidentiary hearing concerning the closure of the courtroom during voir dire. *Id.*

On remand, Gibbs argued that his right to a public trial was violated by the closing of the courtroom and the exclusion of his family from jury selection. Gibbs also argued that he was entitled to resentencing on the basis of the incorrect scoring on PRV 5 and PRV 6. The trial court declined to conduct a full hearing on the court-closure issue. The trial court admitted that its procedure is that, after jury selection begins, it does not allow people to enter or leave the courtroom. The trial court stated that if individuals came after jury selection started, then they would not have been allowed in the courtroom. The trial court denied the motion for a new trial. The trial court also found that Gibbs had a

relationship to the criminal justice system on the date of the offenses for purposes of scoring PRV 5 and PRV 6 and denied the motion for resentencing.

## II. GIBBS'S APPEAL

### A. RIGHT TO A PUBLIC TRIAL

Gibbs argues that the trial court violated his right to a public trial and that he is entitled to automatic reversal. We disagree.

Gibbs did not object to the closure at trial. The Michigan Supreme Court recently held that the plain-error standard applies to a defendant's forfeited claim that the trial court violated the defendant's Sixth Amendment right to a public trial. *People v Vaughn*, 491 Mich 642, 664, 674-675; 821 NW2d 288 (2012).

> [I]n order to receive relief on [a] forfeited claim of constitutional error, [a] defendant must establish (1) that the error occurred, (2) that the error was "plain," (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings. [*Id.* at 664-665.]

The *Vaughn* Court concluded that the first two prongs of the analysis were satisfied because the trial court ordered the courtroom closed before voir dire without advancing "an overriding interest that is likely to be prejudiced" and the error was "clear or obvious" because it was "readily apparent" that the trial court closed the courtroom and it is "well settled" that the right to a public trial extends to voir dire. *Id.* at 665 (citations and quotation marks omitted). The Court also concluded that the third prong was satisfied because the closure of the courtroom was "a plain structural error." *Id.* at 666. However, the Court held that the

fourth prong was not satisfied because "both parties engaged in a vigorous voir dire process," "there were no objections to either party's peremptory challenges of potential jurors," and "each party expressed satisfaction with the ultimate jury chosen." *Id.* at 668-669. Additionally, the Court noted that the presence of the venire—members of the public—lessened the extent to which the closure implicated the defendant's right and guaranteed that the proceedings were subject to a substantial degree of public review. *Id.* at 668. The Court concluded that the defendant was not entitled to a new trial. *Id.* at 669.

In *People v Russell*, 297 Mich App 707, 720; 825 NW2d 263 (2012), this Court stated that "the effect of a partial closure of trial does not reach the level of a total closure and only a substantial, rather than a compelling, reason for the closure is required." The Court concluded that the voir dire proceedings were partially closed because of the limited capacity in the courtroom and that the limited capacity was a substantial reason for the closure. *Id.* Accordingly, the partial closure did not deny the defendant his right to a public trial. *Id.*

Gibbs contends that his family and members of the public were prevented from entering the courtroom during jury selection. The record reveals that before jury selection began, the trial court stated, "And if any spectators would like to come in they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." Gibbs submitted affidavits indicating that individuals were not allowed to enter the courtroom during jury selection. Even accepting Gibbs's contention as true, we find no error given the trial court's statement. It appears that the courtroom was opened to the public initially, but then closed once jury selection began. On remand, the trial court did not

conduct a full hearing and acknowledged that once jury selection had begun, the courtroom was closed and suggested that it was "too confusing" to allow individuals to come and go during jury selection. Even if we were to find error on the basis of the trial court's admitted refusal to allow individuals to enter once jury selection began, Gibbs is not entitled to a new trial or evidentiary hearing. As in *Vaughn*, both parties engaged in vigorous voir dire, there were no objections to either party's peremptory challenges, and each side expressed satisfaction with the jury. Further, the venire itself was present. Accordingly, Gibbs fails to satisfy the fourth prong as set forth in *Vaughn* and is not entitled to a new trial.

### B. PREARREST SILENCE

Gibbs argues that the prosecutor violated his Fifth Amendment right to remain silent by using his prearrest silence to impeach his testimony and by referring to his prearrest silence during closing argument. We disagree.

Gibbs failed to object to the prosecutor's questions during his cross-examination; therefore, the issue is unpreserved. *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). To the extent that Gibbs's argument alleges prosecutorial misconduct, because Gibbs did not object to the prosecutor's statements, the issue is also unpreserved. *People v Cain*, 299 Mich App 27, 35; 829 NW2d 37 (2012). "This Court reviews unpreserved constitutional errors for plain error affecting substantial rights." *Id.* at 40. This Court also reviews unpreserved claims of prosecutorial misconduct for plain error. *Id.* at 35.

During Gibbs's testimony, the prosecutor asked Gibbs when he told his mother what had happened and

when he told the police that Henderson made him rob the store. The prosecutor asked Gibbs if he went to the police station on October 26, 2010, or after he talked to his brother the next day. In her closing argument, the prosecutor stated:

> Because remember despite what Phillip Gibbs testified to here in the courtroom about what his knowledge was, what his role or lack thereof was, he doesn't take an opportunity to run out of the store. He doesn't call 911 from inside the store. He doesn't run away separate from Mr. Henderson after this robbery occurred. He doesn't tell his mother. He doesn't go to the police.

The prosecutor again referred during her rebuttal to Gibbs's failure to turn himself in.

Contrary to Gibbs's assertion, the prosecutor did not violate his constitutional right to remain silent by questioning Gibbs about his failure to alert his mother or law enforcement concerning the robbery.

> A defendant's constitutional right to remain silent is not violated by the prosecutor's comment on his silence before custodial interrogation and before *Miranda*[2] warnings have been given. A prosecutor may not comment on a defendant's silence in the face of accusation, but may comment on silence that occurred before any police contact.
>
> "[A] prosecutor may comment on a defendant's failure to report a crime when reporting the crime would have been natural if the defendant's version of the events were true." [*People v McGhee*, 268 Mich App 600, 634-635; 709 NW2d 595 (2005) (citations omitted).]

However, "[w]here it would not have been natural for the defendant to contact the police—where doing so may have resulted in the defendant incriminating himself—the prosecution cannot properly comment on

---

[2] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

the defendant's failure to contact the police." *People v Dye*, 431 Mich 58, 80; 427 NW2d 501 (1988).

The prosecutor's comments referred to Gibbs's prearrest silence and, therefore, did not violate his right to remain silent. *McGhee*, 268 Mich App at 634. The prosecutor's comments on Gibbs's failure to report the crime suggested that if Gibbs's testimony were true—that his participation in the robbery was coerced—he would have called 911 or gone to the police immediately. Gibbs, however, claims that it would not have been natural for him to contact the police because he would have believed that Henderson might harm him. We conclude that if Gibbs's version of the events were true—that he did not know Henderson was going to rob the store and he was acting under duress by Henderson—then it would have been natural for him to contact the police. Therefore, the prosecutor's comments were proper and there was no plain error.

### C. SENTENCING ERRORS

Finally, Gibbs contends that he is entitled to resentencing because of the erroneous scoring of PRV 5, PRV 6, and offense variable (OV) 13.

> Under MCL 769.34(10), if a minimum sentence is within the appropriate guidelines sentence range, we must affirm the sentence and may not remand for resentencing absent an error in scoring the sentencing guidelines or reliance on inaccurate information in determining the sentence. A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. Scoring decisions for which there is any evidence in support will be upheld. Additionally, we review de novo as a question of law the interpretation of the statutory sentencing guidelines. [*People v Endres*, 269 Mich App 414, 417; 711 NW2d 398 (2006) (citations omitted).]

### 1. PRV 5

"Prior record variable 5 is prior misdemeanor convictions or prior misdemeanor juvenile adjudications." MCL 777.55(1). The sentencing court must assess 2 points if "[t]he offender has 1 prior misdemeanor conviction or prior misdemeanor juvenile adjudication[.]" MCL 777.55(1)(e). The sentencing court must assess zero points if "[t]he offender has no prior misdemeanor convictions or prior misdemeanor juvenile adjudications[.]" MCL 777.55(1)(f). " 'Prior misdemeanor juvenile adjudication' means a juvenile adjudication for conduct that if committed by an adult would be a misdemeanor under a law of this state, a political subdivision of this state, another state, a political subdivision of another state, or the United States *if the order of disposition was entered before the sentencing offense was committed.*" MCL 777.55(3)(b) (emphasis added).

Gibbs's presentence investigation report (PSIR) indicates that he pleaded guilty of illegal entry without the owner's permission, a misdemeanor, on August 3, 2010, and was sentenced to probation for the offense on November 9, 2010. This was a juvenile adjudication. The PSIR indicates that the "Disposition Date" was November 9, 2010. The sentencing offense was committed on October 26, 2010. Accordingly, the order of disposition was not entered before the sentencing offense was committed and Gibbs's juvenile adjudication does not constitute a prior misdemeanor juvenile adjudication for purposes of assessing points under PRV 5. MCL 777.55(3)(b). Therefore, the trial court erred by assessing 2 points under PRV 5. However, because a reduction by 2 points from Gibbs's prior record variable score would not change his PRV level, MCL 777.62, resentencing is not required.

2. PRV 6

"Prior record variable 6 is relationship to the criminal justice system." MCL 777.56(1). The sentencing court must assess 5 points if "[t]he offender is on probation or delayed sentence status or on bond awaiting adjudication or sentencing for a misdemeanor[.]" MCL 777.56(1)(d). The sentencing court must assess zero points if "[t]he offender has no relationship to the criminal justice system[.]" MCL 777.56(1)(e).

As mentioned earlier, Gibbs entered a guilty plea to illegal entry without the owner's permission, a misdemeanor, on August 3, 2010, and was sentenced to probation for the offense on November 9, 2010. This was a juvenile adjudication. This Court has held that a defendant's prior juvenile adjudications supported the scoring of PRV 6. *People v Anderson*, 298 Mich App 178, 182; 825 NW2d 678 (2012) ("The phrase 'criminal justice system' is not limited to adversarial criminal proceedings."). Thus, contrary to Gibbs's assertion, points could be assessed under PRV 6 for his relationship with the juvenile justice system.

There is no evidence that Gibbs was on probation, delayed-sentence status, or bond at the time of the sentencing offense. His PSIR indicates only that he was placed on probation at sentencing or disposition, which took place on November 9, 2010. It appears that Gibbs was, however, awaiting adjudication or sentencing at the time he committed the sentencing offense, given that he had already entered a plea. This Court has stated:

> *Endres* suggests that a five-point score for PRV 6 is not improper when the defendant committed the sentencing offense while awaiting adjudication or sentencing for a misdemeanor, regardless of his or her bond status. The case illustrates this Court's refusal to categorize a defendant as

having no relationship with the criminal justice system when it is obvious that such a relationship exists. [*People v Johnson*, 293 Mich App 79, 88; 808 NW2d 815 (2011).]

Therefore, the trial court properly assessed 5 points under PRV 6, even if Gibbs was not on bond at the time he committed the sentencing offense.

### 3. OV 13

"Offense variable 13 is continuing pattern of criminal behavior." MCL 777.43(1). The sentencing court must assess 25 points if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person[.]" MCL 777.43(1)(c). "For determining the appropriate points under this variable, all crimes within a 5-year period, including the sentencing offense, shall be counted regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). The sentencing court must assess zero points if "[n]o pattern of felonious criminal activity existed[.]" MCL 777.43(1)(g).

Gibbs was convicted of two counts of armed robbery and one count of unarmed robbery, which are all classified under the sentencing guidelines as crimes against a person. MCL 777.16y. Gibbs argues that his convictions arose out of one incident and that he could not have 25 points assessed. However, there is nothing in the language of MCL 777.43(1)(c) to support Gibbs's argument that multiple convictions arising from the same incident cannot be considered for scoring OV 13. In *People v Harmon*, 248 Mich App 522; 640 NW2d 314 (2001), the defendant was convicted of four counts of making child sexually abusive material. He photographed two 15-year-old girls. There were four photos in all—two of each girl, taken on a single date. *Id*. at 524-526. We held that 25 points were properly assessed

under OV 13 because of the "defendant's four concurrent convictions . . . ." *Id.* at 532. Similarly, in this case, while the robberies arose out of a single criminal episode, Gibbs committed three separate acts against each of the three victims and these three distinct crimes constituted a pattern of criminal activity. Additionally, although some subsections of MCL 777.43 contain limitations on a trial court's ability to score for more than one instance arising out of the same criminal episode, subsection (1)(c) contains no such limitation. Accordingly, because multiple concurrent offenses arising from the same incident are properly used in scoring OV 13, the trial court did not err by assessing 25 points for that variable.

### III. HENDERSON'S APPEAL

#### A. DOUBLE JEOPARDY

Henderson contends that his convictions for both assault with intent to rob while armed and armed robbery violate double jeopardy protections. The prosecution concedes error and writes: "Plaintiff agrees that [Henderson's] conviction for assault with intent to rob while armed must be vacated because he is also convicted for [sic] armed robbery involving the same victim during the same criminal episode." We agree that for purposes of the "multiple punishment" analysis under double jeopardy, assault with intent to rob while armed is the "same offense" as armed robbery and that Henderson's conviction for the lesser crime must be vacated.

This Court reviews de novo questions of law, such as a double jeopardy challenge. *People v Garland*, 286 Mich App 1, 4; 777 NW2d 732 (2009).

The prohibition against double jeopardy in both the federal and state constitutions protects against (1) a

second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The third of these protections exists to "protect the defendant from being sentenced to more punishment than the Legislature intended." *People v Meshell*, 265 Mich App 616, 628; 696 NW2d 754 (2005). In this case, Henderson claims that he has been punished twice for the same offense.

We have previously held that assault with intent to rob while armed is a lesser included offense of armed robbery. *People v Akins*, 259 Mich App 545, 552; 675 NW2d 863 (2003); *People v Johnson*, 90 Mich App 415, 421; 282 NW2d 340 (1979). A lesser included offense is "a crime for which it is impossible to commit the greater offense without first having committed the lesser." *People v Walls*, 265 Mich App 642, 645; 697 NW2d 535 (2005). Stated differently, for an offense "[t]o be a lesser included offense, the elements necessary for commission of the greater offense must subsume the elements necessary for commission of the lesser offense." *People v Heft*, 299 Mich App 69, 74-75; 829 NW2d 266 (2012). However,

> [i]n *People v Smith*, 478 Mich 292, 315; 733 NW2d 351 (2007), our Supreme Court held that the "same elements" test set forth in *Blockburger v United States*, 284 US 299, 304; 52 SCt 180; 76 L Ed 306 (1932), is "the appropriate test to determine whether multiple punishments are barred by Const 1963, art 1, § 15." . . . The *Blockburger* test focuses on the statutory elements of the offense, without considering whether a substantial overlap exists in the proofs offered to establish the offense. If each offense requires proof of elements that the other does not, the *Blockburger* test is satisfied and no double jeopardy violation is involved. [*People v Baker*, 288 Mich App 378, 381-382; 792 NW2d 420 (2010) (citations omitted).]

Accordingly, it is necessary to consider the elements of each offense.

MCL 750.89 is the statute prohibiting assault with intent to rob while armed and provides:

> Any person, being armed with a dangerous weapon, or any article used or fashioned in a manner to lead a person so assaulted reasonably to believe it to be a dangerous weapon, who shall assault another with intent to rob and steal shall be guilty of a felony, punishable by imprisonment in the state prison for life, or for any term of years.

Therefore, in order to obtain a conviction for assault with intent to rob while armed, a prosecutor must demonstrate "(1) an assault with force and violence; (2) an intent to rob or steal; and (3) the defendant's being armed." *Akins*, 259 Mich App at 554 (citation and quotation marks omitted).

The revised armed robbery statute,[3] MCL 750.529, now provides:

> A person who engages in conduct proscribed under [MCL 750.530 (robbery)] and who in the course of engaging in that conduct, possesses a dangerous weapon or an article used or fashioned in a manner to lead any person present to reasonably believe the article is a dangerous weapon, or who represents orally or otherwise that he or she is in possession of a dangerous weapon, is guilty of a felony punishable by imprisonment for life or for any term of years. If an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years.

Therefore, in order to obtain a conviction for armed robbery, a prosecutor must prove that

> (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a

---

[3] As amended by 2004 PA 128, effective July 1, 2004.

larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon. [*People v Chambers*, 277 Mich App 1, 7; 742 NW2d 610 (2007).]

We discern no substantive difference between the elements of the two crimes. Because assault with intent to rob while armed is a lesser included offense of armed robbery and neither crime contains an element the other does not, Henderson could not have been convicted of both. Under the same-elements test that is now applicable to the multiple-punishments strand of double jeopardy under *Smith*, his assault conviction must be vacated. *Meshell*, 265 Mich App at 633-634 ("The remedy for conviction of multiple offenses in violation of double jeopardy is to affirm the conviction on the greater charge and to vacate the conviction on the lesser charge.").

### B. SENTENCING ERRORS

Henderson also contends that he is entitled to resentencing, in his case because of the erroneous scoring of OV 3, OV 4, OV 13, and OV 14. We disagree.

Henderson preserved his objection to the scoring of OV 13 by objecting at sentencing. Cf. *Endres*, 269 Mich App at 417. Henderson did not preserve his objections to the scoring of OV 3, OV 4, or OV 14. Cf. *id.* at 422. As noted earlier:

Under MCL 769.34(10), if a minimum sentence is within the appropriate guidelines sentence range, we must affirm the sentence and may not remand for resentencing absent an error in scoring the sentencing guidelines or reliance on inaccurate information in determining the sentence. A

sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score. Scoring decisions for which there is any evidence in support will be upheld. Additionally, we review de novo as a question of law the interpretation of the statutory sentencing guidelines. [*Id.* at 417 (citations omitted).]

This Court reviews unpreserved claims for plain error affecting a defendant's substantial rights. *Id.* at 422.

### 1. OV 3

"Offense variable 3 is physical injury to a victim." MCL 777.33(1). The sentencing court must assess 10 points if "[b]odily injury requiring medical treatment occurred to a victim[.]" MCL 777.33(1)(d). "As used in this section, 'requiring medical treatment' refers to the necessity for treatment and not the victim's success in obtaining treatment." MCL 777.33(3). This Court has stated that " 'bodily injury' encompasses anything that the victim would, under the circumstances, perceive as some unwanted physically damaging consequence." *People v McDonald*, 293 Mich App 292, 298; 811 NW2d 507 (2011).

Costas testified that Henderson hit him between his neck and head and on the side of the face. According to Nancy, Costas had blood dripping down his face and neck. Part of Costas's ear was cut off, and he received four stitches at Hurley Medical Hospital. He also sees his physician for frequent headaches. Nancy suffered whiplash and completed seven weeks of physical therapy. Therefore, the trial court properly assessed 10 points for OV 3.

### 2. OV 4

"Offense variable 4 is psychological injury to a victim." MCL 777.34(1). The sentencing court must assess

10 points if "[s]erious psychological injury requiring professional treatment occurred to a victim[.]" MCL 777.34(1)(a). The sentencing court must also "[s]core 10 points if the serious psychological injury may require professional treatment. In making this determination, the fact that treatment has not been sought is not conclusive." MCL 777.34(2).

This Court has determined that depression and personality changes are sufficient to uphold the scoring of OV 4. *People v Ericksen*, 288 Mich App 192, 203; 793 NW2d 120 (2010). This Court has also held that a victim's "statements about feeling angry, hurt, violated, and frightened support [the] score under our caselaw." *People v Williams*, 298 Mich App 121, 124; 825 NW2d 671 (2012).

Kassing testified that the experience was traumatic and he had bad dreams about it. At sentencing, Nancy stated, "Not to mention what you took from us psychologically." In Costas's victim impact statement, he indicated that he did not feel safe in his store. These statements support a score of 10 points for OV 4.

### 3. OV 13

As mentioned in part II(C)(3) of this opinion, because multiple concurrent offenses arising from the same incident are properly used in scoring OV 13, the trial court did not err by assessing 25 points for that variable.

### 4. OV 14

"Offense variable 14 is the offender's role." MCL 777.44(1). The sentencing court must assess 10 points if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). In scoring this variable,

"[t]he entire criminal transaction should be considered . . . ." MCL 777.44(2)(a); see also *People v Apgar*, 264 Mich App 321, 330; 690 NW2d 312 (2004) (opinion by GAGE, J.).

There was evidence that Henderson was the only perpetrator with a gun, did most of the talking, gave orders to Gibbs, and checked to make sure Gibbs took everything of value. Kassing specifically testified that he believed Henderson was the leader. Further, Gibbs's testimony supports the finding that Henderson was the leader. While neither Nancy nor Costas believed that either defendant was "the leader," "[s]coring decisions for which there is any evidence in support will be upheld." *Endres*, 269 Mich App at 417. Accordingly, the trial court did not err by assessing 10 points for OV 14.

Henderson's conviction of assault with intent to rob while armed vacated. Affirmed in all other respects.

K. F. KELLY, P.J., and MARKEY and FORT HOOD, JJ., concurred.