# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAMES HOWARD SHAUL,

        Defendant-Appellant.

UNPUBLISHED
November 22, 2016

No. 326905
Chippewa Circuit Court
LC No. 14-001528-FC

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

A jury convicted defendant of first-degree criminal sexual conduct, MCL 750.520b(1)(g) (sexual penetration of a physically helpless victim causing injury); first-degree vulnerable adult abuse, MCL 750.145n(1); fourth-degree criminal sexual conduct (sexual contact by force or coercion); and violation of the Sex Offender's Registration Act (SORA[1]) by residing in a student safety zone, MCL 28.735(2)(a). The trial court sentenced defendant as an habitual offender, fourth offense, MCL 769.12, to concurrent prison terms of 60 to 90 years for the CSC I conviction, 3 years and 10 months to 15 years each for the first-degree vulnerable adult abuse and CSC IV convictions, and to a 12-month jail term for the SORA violation conviction. Defendant appeals as of right. We affirm in part, vacate in part, and remand for resentencing.

According to the 56-year-old immobile and wheelchair-bound quadriplegic victim, defendant, who was the then-boyfriend of one of her caregivers, was alone with the victim when he began asking her personal sexual questions while he was "touching himself" in her presence. Defendant then approached and stood beside the victim, exposed his penis, and asked her if she wanted to touch it or put it in her mouth. The victim testified that defendant then rubbed her left nipple through her shirt. She testified that defendant tried to put his finger in her "private part" but never did and that he "only touched the hairs of my private area" and "didn't touch the inside." He then pulled up her shirt, spit "over [her] private part", and ejaculated on her stomach. According to the victim, during the incident her urostomy bag was torn from her body. She testified that defendant refused her repeated requests for him to leave her home or to allow her to call a caregiver.

---

[1] MCL 78.721 et seq.

-1-

# I. RIGHT TO A PUBLIC TRIAL

Defendant argues that the trial court violated his constitutional right to a public trial by closing the courtroom during the victim's testimony. The record reveals that the trial judge had a meeting in chambers with the prosecutor and defense counsel regarding the prosecutor's earlier request to close the courtroom during the victim's testimony so as to not cause further psychological trauma to the victim.[2] The trial court thereafter announced on the record, without objection from defense counsel, that the courtroom would be closed during the victim's testimony. For a defendant to receive relief pursuant to a "forfeited claim of constitutional error, defendant must establish (1) that the error occurred, (2) that the error was 'plain,' (3) that the error affected substantial rights, and (4) that the error either resulted in the conviction of an actually innocent defendant or seriously affected the fairness, integrity, or public reputation of judicial proceedings." *People v Vaughn*, 491 Mich 642, 664-665; 821 NW2d 288 (2012).

The right to a public trial is guaranteed by both the Sixth Amendment of the United States Constitution and article 1, § 20 of the 1963 Michigan Constitution. *Vaughn*, 491 Mich at 650. The right is not absolute, however. In *Vaughn*, *id*. at 653, the Court, quoting *Presley v Georgia*, 558 US 209, 214; 130 S Ct 721; 175 L Ed 2d 675 (2010), observed that "[a] defendant's Sixth Amendment right to a public trial is limited, and there are circumstances that allow the closure of a courtroom during any stage of a criminal proceeding even over a defendant's objection." The United States Supreme Court declared the following requirements when the courtroom is closed:

> The party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure. [*Waller v Georgia*, 467 US 39, 48; 104 S Ct 2210; 81 L Ed 2d 31 (1984).]

Thus, to facilitate appellate review of whether the trial court's decision to close the courtroom was proper, a trial court must state the interest that justified the closure and articulate specific findings that explain why that interest justified the closure. *People v Kline*, 197 Mich App 165, 169; 494 NW2d 756 (1992). Further, the closure must be no broader than needed to protect the interest justifying it; that is, it must be "narrowly tailored" to satisfy the purpose for which closure was ordered. *Id*. at 169, 171.

Here, the trial court's comment on the record before the in-chambers meeting indicates that the court agreed with the prosecutor that the presence of others in the courtroom during the victim's testimony would "run a risk of causing additional trauma." The prosecutor does not dispute that the trial court, on the record, did not consider reasonable alternatives to closing the proceeding and did not make findings adequate to support the closure. Even assuming that the trial court erred by closing the courtroom during the victim's testimony and that the error

---

[2] At that time of the prosecutor's request, defense counsel stated, "I don't see why my client's support personnel, being his parents[,] can't be here. There's a no contact order."

satisfied the first three *Carines* requirements, reversal would only be warranted if the error "resulted in the conviction of an actually innocent defendant" or seriously affected the fairness, integrity, or public reputation of judicial proceedings. *Vaughn*, 491 Mich at 666. Defendant has neither argued in this issue nor established that he was actually innocent and, because the courtroom closure has not been shown to have impacted the ability of counsel to examine the victim thoroughly, or to have seriously affected the fairness, integrity, or public reputation of the judicial proceedings, defendant has not demonstrated entitlement to a new trial. *Vaughn*, 460 Mich at 774.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL DURING PLEA NEGOTIATIONS

Defendant argues that his counsel's deficient advice led to his rejection of a plea offer. In order to preserve the issue of ineffective assistance of counsel, a defendant must file a timely motion in the trial court for a new trial raising the issue, *People v Ginther,* 390 Mich 436, 443–444; 212 NW2d 922 (1973), or move in this Court to remand the case to the trial court so that he may properly preserve the issue for appellate review. *Id*. at 444–445. Defendant did not file a motion in the trial court and did not bring a motion to remand in this Court. This issue is not preserved, and review is therefore limited to the existing record. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000).

Both the United States and Michigan Constitutions grant criminal defendants the right to the effective assistance of counsel at trial. US Const, Am VI; Const 1963, art 1, § 20; *People v Trakhtenberg,* 493 Mich 38, 51; 826 NW2d 136 (2012). A defendant claiming ineffective assistance of counsel must establish (1) that "counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* at 51–52 (citation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Carbin,* 463 Mich 590, 600; 623 NW2d 884 (2001) (citation and quotation marks omitted). Effective assistance of counsel is presumed, and a defendant bears the heavy burden of proving otherwise. *People v Pickens*, 446 Mich 298, 302-303; 521 NW2d 797 (1994). This Court does not apply the benefit of hindsight when determining whether trial counsel performed competently. *People v Payne,* 285 Mich App 181, 190; 774 NW2d 714 (2009).

Criminal defendants are also entitled to effective assistance of competent counsel during plea negotiations. *Lafler v Cooper,* 566 US ___; 132 S Ct 1376, 1384; 182 L Ed 2d 398 (2012) (citations omitted). When considering whether trial counsel is ineffective in the context of the plea process, the defendant "must show that the outcome of the plea process would have been different with competent advice." *Id.* at 1384 (citation omitted). When a defendant chooses to stand trial and claims ineffective assistance of counsel during plea bargaining, in order to satisfy the second part of the ineffective assistance test, known as the prejudice prong, the

> defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the

offer's terms would have been less severe than under the judgment and sentence that in fact were imposed. [*Id.* at 1385.]

Defendant has failed to identify the allegedly deficient advice that he received. Defense counsel stated on the record that the plea offer, which included a guilty plea to the uncharged offense of CSC I, would require defendant to "concede facts that were not in evidence" and "plead to a life offense with a habitual offender second." Defendant was fully advised of the plea offer, as well as the parties' calculation of the guidelines range at 135 to 280 months for purposes of the plea offer, on the record. Defendant affirmatively stated that he formally rejected the plea offer as stated on the record. Defense counsel indicated that defendant had rejected each previous plea offer that the prosecution had offered, which was consistent with defendant's claim of innocence. Defendant has failed to demonstrate that counsel's performance fell below an objective standard of reasonableness and that he was denied the effective assistance of counsel.[3]

## III. SUFFICIENCY OF THE EVIDENCE

Defendant argues that the prosecution failed to present sufficient evidence of sexual penetration to support defendant's first-degree CSC conviction. This Court reviews de novo challenges to the sufficiency of the evidence to determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *People v Lockett*, 295 Mich App 165, 180; 814 NW2d 295 (2012).

In reviewing a challenge to the sufficiency of the evidence, "[t]his Court reviews the evidence in the light most favorable to the prosecution." *Id.* "This Court resolves all conflicts regarding the evidence in favor of the prosecution," *Lockett*, 295 Mich App at 180, and "[q]uestions of credibility are left to the trier of fact and will not be resolved anew by this Court," *People v Avant*, 235 Mich App 499, 506; 597 NW2d 864 (1999).

Defendant's first-degree CSC conviction arose under MCL 750.520b(1)(g). The essential elements of that charge are that the defendant (1) engaged in sexual penetration with the victim, (2) caused personal injury to the victim, and (3) that the victim was mentally incapable, mentally incapacitated, or physically helpless at the time of the alleged act. Defendant challenges only the sufficiency of the evidence regarding the element of sexual penetration. "Sexual penetration" is defined as "sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body . . . into the genital or anal openings of another person's body . . ." MCL 750.520a(r). The labia are included in the "genital openings" of the female. See *People v Bristol*, 115 Mich App 236, 238; 320 NW2d 229 (1981).

The victim testified that defendant "only touched the hairs of my private area. He didn't touch the inside." She testified that defendant "tried to go in my private part" but that he "never did." The prosecution acknowledges in its brief that the victim never explicitly testified that defendant's actions met the definition of sexual penetration. The prosecutor argues, however,

---

[3] Thus, we need not reach the "prejudice" prong.

that the testimony of the sexual assault nurse examiner who examined the victim 5 days after the assault was sufficient to support a finding that defendant had sexually penetrated the victim. The nurse examiner testified that the victim indicated that her vagina was hurting, that the victim had post-menopausal atrophic vaginitis that can be irritated by digital manipulation, and that what she observed in the victim was consistent with sexual penetration, However, the nurse examiner also testified that the victim denied penetration and that atrophic vaginitis can be caused by *any* contact. Given the victim's denial of penetration and the lack of evidence regarding an intrusion into the victim's genital opening, as well as the nurse examiner's testimony that *any* contact can irritate atrophic vaginitis, the evidence, when viewed in the light most favorable to the prosecution, was not sufficient to enable the jury to find beyond a reasonable doubt that defendant sexually penetrated the victim. Consequently, we vacate defendant's CSC I conviction and sentence and remand for resentencing.

## IV. SENTENCING GUIDELINES

Defendant argues that the trial court erred in scoring Offense Variables (OV) 3, 4, 7, 11, 12, and 13. We address defendant's arguments in the event defendant raises the arguments at resentencing. We review for clear error the trial court's factual determinations at sentencing, which must be supported by a preponderance of the evidence. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). Whether the factual determinations were sufficient to assess the offense variables is a question this Court reviews de novo. *Id.* See *People v Steanhouse,* 313 Mich App 1; 880 NW2d 297 (2015), lv gtd 499 Mich 934 (2016); slip op p 19 (holding that because scoring the offense variables remains relevant under *People v Lockridge*, 498 Mich 358; 870 NW2d 502, cert den ___ US ___; 136 S Ct 590; 193 L Ed 2d 487 (2015), the standards of review traditionally applied to the trial court's scoring of the offense variables remain viable). This Court also reviews de novo, as a question of law, the proper interpretation of the sentencing guidelines. *People v Gullett,* 277 Mich App 214, 217; 744 NW2d 200 (2007).

Defendant first argues that the trial court erred by scoring ten points for offense variable (OV) 3, "bodily injury requiring medical treatment occurred to a victim." MCL 777.33(1)(d). The evidence revealed that the victim went to the hospital five days after the incident for the purpose of having a sexual assault examination performed. The sexual assault nurse examiner observed no evidence of bruising, biting, or "any other physical evidence." The nurse examiner did not testify regarding any injuries necessitating medical treatment and did not testify that the victim received any treatment. The evidence did not support the assessment of 10 points under OV 3 because there was no evidence that medical treatment was necessary. See *People v Armstrong*, 305 Mich App 230; 851 NW2d 856 (2014).

Defendant also argues that the trial court erred by scoring 10 points for OV 4, "serious psychological injury requiring professional treatment occurred to a victim." MCL 777.34(1)(a). Whether the victim has sought treatment does not determine whether the injury may require professional treatment. MCL 777.34(2). The trial court may assess 10 points for OV 4 if the victim suffers, among other possible psychological effects, personality changes, anger, fright, or feelings of being hurt, unsafe, or violated. *People v Gibbs*, 299 Mich App 473, 493; 830 NW2d 821 (2013). Here, evidence was presented that the victim was anxious, could not sleep, was depressed, and was scared after the incident. She was treated with medication, therapy, and counseling, and at the time of trial was still being treated for anxiety. The victim testified that

since the assault she has been fearful of strangers and does not want to come out of her home. She testified that she had a light put behind her house and that she sits in a different spot in her home so that she can see the doorway. The trial court did not clearly err when it found that the victim suffered a serious psychological injury requiring professional treatment.

Defendant next argues that the trial court erred by scoring 50 points for OV 7. MCL 777.37(1)(a) authorizes a 50-point score for OV 7 if "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."[4] In determining whether a 50–point score for OV 7 is justified, "[t]he relevant inquiries are (1) whether the defendant engaged in conduct beyond the minimum required to commit the offense; and, if so, (2) whether the conduct was intended to make a victim's fear or anxiety greater by a considerable amount." *Hardy*, 494 Mich at 443–444.

Defendant's conduct during the offense was insufficient to warrant an assessment of 50 points for OV 7. Defendant's only conduct during the offense that would have increased the victim's fear and anxiety was his refusal to allow her to use the telephone to call for assistance. This does not appear to be the type of conduct *designed to substantially* increase a victim's fear or anxiety *by a considerable amount*, nor does it evidence an intent on the part of defendant to do so. See MCL 777.37(1)(a); *Hardy*, 494 Mich at 443. Therefore, the trial court erred in assessing 50 points for OV 7.

Defendant next argues that the trial court erred by scoring 25 points for OV 11. Under OV 11, all "sexual penetrations of the victim arising out of the sentencing offense" must be scored. MCL 777.41(2)(a). Twenty-five points are to be scored for one criminal sexual penetration. MCL 777.41(2)(b). Given our conclusion that the evidence was insufficient to support a finding that defendant sexually penetrated the victim, the evidence would not support a score of 25 points but, rather, a score of zero points for "no criminal sexual penetrations." MCL 777.41(1)(c).

Defendant also objects to the scoring of 25 points for OV 12. MCL 777.42(1) addresses contemporaneous criminal acts. Under OV 12, a court must assess 25 points if "three or more contemporaneous felonious criminal acts involving crimes against a person were committed." MCL 777.42(1)(a). A felonious criminal act is contemporaneous if it occurred within 24 hours of the sentencing offenses and it has not and will not result in a separate conviction. MCL 777.42(2)(a); *People v Light*, 290 Mich App 717, 722; 803 NW2d 720 (2010). It must be separate from the behavior establishing the sentencing offenses. *Id.* at 723.

The trial court scored 25 points because "[t]he defendant spit on the victim's pubic hair, masturbated in front of her and ejaculated on her person." Defendant argues only that OV 12 should have been scored at zero because "Count 3 covered all of these in the Vulnerable Adult Abuse Conviction" and because "CSC 4 covers the spitting." None of these acts, however, were

---

[4] MCL 777.38(1)(a) has since been amended by 2015 PA 137, effective Jan. 5, 2016, to read: "A victim was treated with sadism, torture, excessive brutality, or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."

charged, and they are not encompassed within the vulnerable adult abuse charge or the fourth-degree CSC charge.[5] Defendant raises no other argument with respect to the scoring of OV 12. Defendant has failed to demonstrate that the trial court erred by assessing 25 points for OV 12.

Lastly, defendant argues that the trial court erred by scoring 25 points for OV 13. "Offense variable 13 is continuing pattern of criminal behavior." MCL 777.43. OV 13 should be assessed at 25 points when "[t]he offense was part of a pattern of felonious criminal activity involving three or more crimes against a person." MCL 777.43(1)(c). A pattern of criminal activity may be based on multiple concurrent offenses arising from a single event. *People v Harmon,* 248 Mich App 522, 532; 640 NW2d 314 (2001). When a trial court assesses this variable, it is required to count "all crimes within a 5–year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a). Contrary to defendant's argument, MCL 777.43 does not limit the "trial court's ability to score more than one instance arising out of the same criminal episode." *Gibbs*, 299 Mich App at 488. "[M]ultiple concurrent offenses arising from the same incident are properly used in scoring OV 13 [.]" *Id.* at 488. Indeed, MCL 777.43(2)(a) mandates consideration of *all* crimes within a 5–year period. The trial court did not err in assessing 25 points for OV 13.

The prosecutor concedes that the trial court improperly imposed a probation oversight fee under MCL 771.3c because defendant was not sentenced to probation. On remand, the fee shall not be imposed if defendant does not receive a probationary sentence.

Defendant has also argued that the trial court's scoring of the OVs was based on unconstitutional judicial fact-finding. In *People v Lockridge,* 498 Mich 358, 399; 870 NW2d 502 (2015), our Supreme Court held that Michigan's sentencing guidelines are advisory, remedying the constitutional violation presented by allowing mandatory minimum sentences to be increased based on judicial fact-finding. Because we conclude that defendant is entitled to be resentenced, defendant's *Lockridge* issue is now moot, and we need not address it. "An issue is moot when an event occurs that renders it impossible for the reviewing court to fashion a remedy to the controversy." *People v Cathey,* 261 Mich App 506, 510; 681 NW2d 661 (2004). This Court generally does not decide moot issues. *B P 7 v Bureau of State Lottery,* 231 Mich App 356, 359; 586 NW2d 117 (1998).

## V. STANDARD FOUR BRIEF

Defendant argues that the prosecutor committed error with respect to a remark made during opening statements and a remark made during closing arguments, both of which he asserts vouched for the credibility of the victim. Because defendant did not object to the allegedly improper remarks and request a curative instruction, our review of this issue is limited to ascertaining whether there was plain error that affected defendant's substantial rights. *People v Brown*, 279 Mich App 116, 134; 755 NW2d 664 (2008).

---

[5] The fourth-degree CSC charge involved the touching of the victim's groin and/or chest.

The test for prosecutor error is whether the defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). A prosecutor may not vouch for the credibility of a witness by implying that he or she has some special knowledge of the witness's truthfulness. *People v Thomas,* 260 Mich App 450, 455; 678 NW2d 631 (2004). But the prosecutor is free to argue the evidence and the reasonable inferences that arise from it. *People v Seals,* 285 Mich App 1, 22; 776 NW2d 314 (2009).

Contrary to defendant's argument, the prosecutor's remark during opening statements about the victim's bravery in overcoming the obstacles relating to the 1983 attack that rendered her a quadriplegic was not a statement vouching for the victim's credibility. Similarly, there was nothing improper about the prosecutor's remark during closing arguments that, based on the facts in the record, the victim had no reason to lie about what defendant had done to her and that she had exposed herself to embarrassment and the difficulty of getting to a hospital to undergo a sexual assault examination because she was telling the truth. The prosecutor's remarks do not amount to error. We therefore also reject defendant's abandoned argument that counsel was ineffective for failing to object to the prosecutor's remarks. MCR 7.212(C)(5); *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Defendant next argues that the prosecutor improperly elicited testimony regarding defendant's previous CSC conviction and his status as a registered sex offender living within a student safety zone. However, two of the crimes of which defendant was charged – failure to register as a sex offender under SORA and violation of SORA by residing in a student safety zone – required the prosecutor to prove that defendant was a registered sex offender. Consequently, defendant's contention that evidence that defendant was a registered sex offender was irrelevant, prejudicial, and not probative, is misplaced. And, because the evidence was an element of the crimes for which defendant was charged, defense counsel was not ineffective for failing to object to it. *Ericksen*, 288 Mich App at 201.

Next, defendant asserts that the trial court erred by allowing the prosecutor to elicit testimony from a police officer concerning the effect of trauma on a victim's memory without the officer being qualified as an expert. We review for an abuse of discretion the trial court's evidentiary rulings that have been properly preserved. *People v Unger*, 278 Mich App 210, 216; 749 NW2d 272 (2008). Preliminary questions of law are reviewed de novo. *People v Pattison*, 276 Mich App 613, 615; 741 NW2d 558 (2007). An erroneous evidentiary ruling does not require reversal unless it affirmatively appears that it is more probable than not that the error was outcome determinative. MCL 769.26; *People v Lukity*, 460 Mich 484, 488, 495–496; 596 NW2d 607 (1999).

The officer testified that he had been trained to investigate the crime of criminal sexual conduct, that the training included the interviewing of CSC victims, and that he was specifically trained in "dealing with the process of memory for someone experiencing trauma." He opined that it is not uncommon for victims of traumatic events to be unable to initially recall details of the event and to recall details over time.

MRE 701 provides the framework for opinion testimony from a lay witness:

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

On the other hand, in order to give opinion testimony based on specialized knowledge, a witness must first be qualified as an expert under MRE 702. In this case, the officer testified several times "based on his experience and training." His testimony was "rationally based on" his perceptions of victims of trauma and sexual abuse and presumably "helpful to a clear understanding of a fact in issue," i.e., the victim's conduct. MRE 701. The question is whether his testimony was also grounded in "scientific, technical, or other specialized knowledge," requiring that he be qualified as an expert. MRE 702.

Although the officer's testimony was not "a technical or scientific" analysis, it was nevertheless based on his specialized knowledge of trauma and sexual abuse victims and acquired through his training and experience as a police officer. See *People v Petri*, 279 Mich App 407, 416; 760 NW2d 882 (2008); *Dobek*, 274 Mich App at 77-78. His testimony was not simply a "common sense" opinion but was expressly qualified as an opinion arising from training and experience. See *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003). And, the officer's testimony was not directly related to his own perceptions of the victim. Rather, the officer testified regarding the delayed memory tendencies of victims like the victim in this case without actually stating that the present victim exhibited those tendencies. The officer's testimony constituted expert testimony because it went beyond his perceptions and common sense inferences arising therefrom, and was based on his specialized training and experience as a police officer. The trial court erred by admitting this testimony without requiring that the officer be qualified as an expert.

Nevertheless, a police officer can be qualified as an expert on the basis of experience or training. See, e.g., *Petri*, 279 Mich App at 416. The officer's testimony was expressly limited to observations arising out of his training and experience as a police officer. Thus, the officer would have qualified as an expert witness for the purpose of making these observations. He testified that he had investigated hundreds of criminal sexual conduct cases and that he had attended several trainings involving the investigation of the crime of criminal sexual conduct and interviewing and obtaining evidence from CSC victims. He also testified that he had specific training in dealing with the memory process of victims who experience trauma. See *id*. Because the record demonstrates that the officer would have qualified as an expert witness, the error was not outcome determinative.[6]

Defendant also argues that the prosecutor committed error by asking leading questions of the victim about defendant's finger. Review of alleged prosecutorial error is precluded unless the defendant timely and specifically objected below, unless an objection could not have cured

---

[6] We note that the sexual assault nurse examiner presented similar testimony regarding the effect of trauma on the memories of victims and that defendant has not challenged that testimony on appeal.

the error, or failure to review the issue would result in a miscarriage of justice. *Unger*, 278 Mich App at 234-235. Because defendant failed to raise a contemporaneous objection and request a curative instruction, our review is limited to ascertaining whether there was plain error that affected substantial rights. *Brown*, 279 Mich App at 134. Reversal is warranted only when plain error resulted in the conviction of an innocent person, or seriously affected the fairness, integrity, or public reputation of the proceedings. *Unger*, 278 Mich App at 235.

Under MRE 611(d)(1), leading questions are not to be used during direct examination unless they are necessary to develop a witness's testimony. While a prosecutor technically commits an error when he or she asks an improper leading question, such an error does not normally warrant reversal of a defendant's conviction. *People v Watson,* 245 Mich App 572, 587; 629 NW2d 411 (2001). In order to warrant reversal, a defendant must show prejudice, or a "pattern of eliciting inadmissible testimony." *Id.*

Defendant's argument fails to present the challenged questions in context. The victim had already testified about defendant's finger feeling like sandpaper and about biting his finger before the prosecutor asked the allegedly improper questions about defendant's finger. Thus, the prosecutor was restating testimony that had already been offered by the victim. The questions did not amount to improper leading questions. Further, even assuming the questions were improper leading questions, defendant has failed "to show some prejudice or pattern of eliciting inadmissible testimony." *Watson*, 245 Mich App at 588. Additionally, counsel was not ineffective for failing to raise a futile objection. *Ericksen*, 288 Mich App at 201.

Defendant also argues that he was denied the right to a fair trial by pretrial publicity and that trial counsel was ineffective for failing to move for a change of venue based upon pretrial publicity. Defendant has provided no citation to the transcript to support any of his bare assertions regarding pretrial publicity. Our review of the transcripts has unveiled no mention whatsoever of pretrial publicity.[7] Defendant has utterly failed to show that "there is either a pattern of strong community feeling against him and that the publicity is so extensive and inflammatory that jurors could not remain impartial when exposed to it, or that the jury was actually prejudiced or the atmosphere surrounding the trial was such as would create a probability of prejudice." *People v Cline*, 276 Mich App 634, 639; 741 NW2d 563 (2007) (internal quotation marks and citation omitted). He has failed to demonstrate that the jury actually chosen could not remain impartial, or that there was any actual prejudice or probability of prejudice. *Cline*, 276 Mich App at 639. He has failed to demonstrate that he was denied the right to a fair trial by pretrial publicity. Therefore, a motion to change venue from defense

---

[7] At the beginning of the second day of trial, the trial court stated "there has been little snippets on both 9 & 10 news and 7 & 4 news. I don't know if any of you seen it. If you have seen it, disregard it. . . . So it wasn't . . . anything that was detrimental it just identified that the matter, the trial was going on." The trial court's comments clearly indicate that the court found the news snippets not to have been detrimental and to have merely indicated that the trial was taking place. There is nothing in the court's comments to suggest that the news report contained any details about the trial or provided any "unduly prejudicial publicity."

counsel would have been futile; counsel is not ineffective for failing to raise futile motions. *People v Milstead*, 250 Mich App 391, 401; 648 NW2d 648 (2002).

Lastly, defendant argues that the prosecutor failed to present sufficient evidence to identify defendant as the perpetrator of the offenses. A defendant's challenge to the sufficiency of the evidence is reviewed de novo on appeal. This Court reviews de novo challenges to the sufficiency of the evidence to determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Lockett*, 295 Mich App at 180.

"[I]t is well settled that identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). Thus, the prosecution must prove the identity of defendant as the perpetrator of the crime beyond a reasonable doubt. *Id.* "[T]his Court has stated that positive identification by witnesses may be sufficient to support a conviction of a crime." *People v Davis,* 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.*

The victim identified defendant in the courtroom as the perpetrator of the crimes. Defendant asserts that the victim's identification testimony was weak because the victim referred to defendant as "Jamie." However, several witnesses, including defendant's former girlfriend, referred to defendant as "Jamie" throughout the trial, and the victim referred to "Jamie Shaul" when she identified him in court. The prosecution provided sufficient evidence to establish defendant's identity as the perpetrator of the crimes.

Affirmed in part, vacated in part, and remanded for resentencing. We do not retain jurisdiction.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro