# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

CAVASSEAIRE TIDELL DYKES,

Defendant-Appellant.

UNPUBLISHED
February 23, 2016

No.   323944
Genesee Circuit Court
LC No.   13-033363-FH

Before:  SERVITTO, P.J., and SAAD and O'BRIEN, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of first-degree home invasion, MCL 750.110a(2); possession of a firearm by a felon, MCL 750.224f; felonious assault, MCL 750.82; possession of a firearm during the commission of a felony (felony firearm), MCL 750.227b; unlawful imprisonment, MCL 750.349b; and domestic violence, MCL 750.81(2).  The trial court sentenced him, as a second habitual offender, MCL 769.10, to concurrent prison terms of 120 months to 30 years for first-degree home invasion; 30 months to 7½ years for felon in possession; 28 months to 6 years for felonious assault; 107 months to 22½ years for unlawful imprisonment; and 93 days for domestic violence, with all sentences to be served consecutively to a two-year term for felony firearm.  We affirm.

## I.  FACTS

The complainant and defendant began dating in 2011.  According to the complainant, she ended the relationship at some point toward the end of May 2013 after several incidents in which defendant had become physically violent toward her.  On June 1, 2013, she was home alone when she heard defendant yelling and knocking on the back door of her house.  The complainant testified that he sounded angry, so she yelled through the door that he needed to calm down and leave, and that she would talk to him later.  Instead, defendant broke a window frame near her back door and entered her house.  She ran out the front door.  Defendant chased her, grabbed her by the hair, and dragged her back into the house, where he hit her with a gun, and kicked and punched her.  He also held her at gunpoint and told her that the only way she would leave the house was in a "body bag."

Two responding police officers testified that as they approached the house, they could hear two people yelling; however, when they knocked on the door, the voices stopped.  After they knocked for several minutes, they announced that they would kick the door in, and the

-1-

complainant then came to the door with scratches, marks and bruises on her face and body. The officers testified that she was initially evasive in response to their questions as to the whereabouts of the person who had assaulted her, but she eventually told them that defendant was hiding in a bedroom underneath a bed. She also told them that defendant had hidden the gun between her mattress and box spring. The officers then located defendant and the gun in the designated locations.

## II. PROSECUTORIAL MISCONDUCT

Defendant first argues that the prosecutor engaged in instances of misconduct by eliciting irrelevant and unfairly prejudicial similar acts evidence from the complainant. We disagree.

The complainant explained that when she ended their relationship, she told defendant she was going to have a tattoo of his name covered with a different tattoo. She testified that when he saw her at a tattoo shop on the night before the instant offenses, he assaulted her and that her uncle, the owner of the shop, had to threaten defendant with a gun to end the incident. When the prosecutor questioned the complainant about this incident, the following exchange occurred:

> *Q*. Was it your understanding [that defendant] didn't want you to [have the tattoo covered]?
>
> *A*. Yeah but we had—we had got into a fight previous to this and he had broke a flat screen TV over my head and stomped on me causing me to lose a baby I was pregnant for and I had to tell everybody I had an abortion. And I told him I was done, like I didn't want to be with him no more, and I told him I was covering up his name.
>
> *Q*. Why did you have to tell everybody you got an abortion?
>
> *A*. Cause he didn't want people to know that he—I had to tell everybody that I had got sick from diabetes because I'm diabetic, . . . and that I was in the hospital because he didn't want people to know that he had caused me to lose the baby.

The complainant also testified that when she and defendant had lived together at a different residence a few months before the charged offenses, he had "duct taped" her and shot at her twice.

Defendant argues that this testimony was other acts evidence that was inadmissible under MRE 404(b)(1), and that it was improperly admitted as evidence of his propensity to commit acts of domestic violence. However, prior acts of domestic violence are admissible under MCL 768.27b(1), which provides that "in a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other acts of domestic violence is admissible for any purpose for which it is relevant, if it is not otherwise

excluded under Michigan rule of evidence 403[1]." Our Supreme Court has held that although MCL 768.27b irreconcilably conflicts with MRE 404(b), the statute prevails because it does not "impermissibly infringe on this Court's authority regarding rules of practice and procedure under Const 1963, art 6, § 5." *People v Watkins*, 491 Mich 450, 455-456; 818 NW2d 296 (2012).[2] To the extent these other acts of domestic violence would have been inadmissible under MRE 404(b)(1), they were nonetheless admissible under MCL 768.27b unless barred by MRE 403; "evidence admissible under MCL 768.27a remains subject to MRE 403." *Watkins, supra*, at 456.

Defendant also argues that this evidence was inadmissible under MRE 403. We do not agree that the evidence was more prejudicial than probative. Evidence of other acts of domestic violence is admissible under 768.27b for any purpose, subject to MRE 403, including to prove a defendant's propensity to commit the crime. MCL 768.27b(1). Thus, defendant's argument that the evidence was inadmissible because it allowed the jury to infer that he had a "bad character" fails. Moreover, because, as discussed below, other evidence was sufficient to support defendant's convictions for the charged offenses, we conclude that any prejudicial effect of the complainant's testimony regarding defendant's alleged other acts did not adversely affect the fairness or integrity of the proceedings. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

Defendant argues next that the prosecutor committed misconduct when she argued that he was in possession of the handgun found during the police search of the complainant's house. During closing argument, the prosecutor stated, "there's no question [defendant] was possessing this weapon. And then where was the weapon when he was arrested? It was right next to him underneath the mattress of the bed he was hiding underneath." The prosecutor further argued that defendant had possession of the gun because "[t]he police officers saw it in his possession," and that one of the officers had testified that "when they pulled him out from . . . under the bed, a couple bullets came rolling out with him. [Defendant] had the gun." Defendant claims that the testimony presented at trial did not support the prosecutor's statements. However, one of the police officers who searched the complainant's house testified that when they pulled defendant from underneath the bed some bullets that were on the floor "kind of rolled out" along with him. The officers also testified that the weapon was found in the bed underneath which defendant was hiding. Thus, defendant's assertion that the prosecutor's comments were not based on the evidence is not accurate. In addition, the prosecutor's statement that defendant's proximity to the weapon constituted possession is supported by *People v Hill*, 433 Mich 464, 470-471; 446

---

[1]  MRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

[2] *Watkins* analyzed the effect of MCL 768.27a on MRE 404(b). *Watkins, supra*, at 455-456. In *People v Mack*, 493 Mich 1, 3; 825 NW2d 541 (2012), the Court held that its decision resolving the conflict between the court rule and the statute in *Watkins* fully controlled in *Mack* as to MCL 768.27b.

NW2d 140 (1989), where our Supreme Court held that "a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant. Physical possession is not necessary as long as the defendant has constructive possession." The evidence demonstrated that defendant had constructive possession of the firearm found in the complainant's home pursuant to *Hill*. Thus, the prosecutor's comments were properly based on the evidence, and did not constitute misconduct.

Lastly, defendant asserts that the prosecutor committed misconduct by failing to inform the jury that the complainant had "prior and pending criminal offenses of dishonesty" and had "previously made false accusations of abuse after fights with the father of her child." However, even if it could be said that the prosecutor had a duty to present such evidence, defendant does not provide any evidence of the alleged convictions or the alleged false accusations. Thus, there is no factual predicate for this argument.

### III. INEFFECTIVE ASSISTANCE[3]

Defendant next maintains that his counsel provided ineffective assistance. The accused has the right under the federal and state Constitutions to the effective assistance of counsel. US Const, Am VI; Const 1963, art 1, § 20; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). A defendant bears a heavy burden to show that counsel made errors so serious that he was not performing as the counsel guaranteed by the Sixth Amendment, and the defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v McGraw*, 484 Mich 120, 142; 771 NW2d 655 (2009), citing *Strickland, supra*, at 668. "Moreover, the defendant must establish prejudice, i.e., a reasonable probability that but for counsel's error, the result of the proceeding would have been different." *Id.*

Defendant first claims that trial counsel was ineffective for failing to call six "res gestae" witnesses who would have testified that he and the complainant lived together such that he could not have committed a home invasion at her residence. We note that, although defendant refers to the witnesses as "res gestae" witnesses, there is no evidence that the individuals identified in his Standard 4 brief were present at the scene of the incident. Defendant also does not indicate that he informed trial counsel about the existence of these witnesses. Counsel could not be expected to call witnesses whose existence was unknown to him. Moreover, even if counsel was aware of these witnesses, he may have decided it was not in the interest of the defense to call them. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002) (citations omitted). This Court has held that "the failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense." *People v Dixon*, 263 Mich App 393, 398; 688 NW2d 308 (2004) (citation omitted). The record indicates that defense counsel sought to show that defendant and the complainant were still

---

[3] Defendant previously brought a motion to remand for a hearing on the issue of ineffective assistance of counsel, which we denied. *People v Cavasseaire Tidell Dykes*, unpublished order of the Court of Appeals, entered June 5, 2015 (Docket No. 323944).

involved in a romantic relationship when the offenses occurred, and that defendant was welcome to visit her home. This theory achieved much the same purpose—i.e., it sought to establish that defendant did not commit home invasion by entering the complainant's home against her wishes. Defendant has not shown that he was deprived of a substantial defense by counsel's supposed failure to call the witnesses. *Id.*

According to defendant, counsel was also ineffective for failing to impeach the complainant with evidence of her convictions for criminal offenses of dishonesty, as well as with inconsistent statements from the preliminary examination and trial. As discussed, defendant has not identified or provided evidence of the offenses that the complainant allegedly committed. Because he has failed to offer any proof that the complainant committed an offense of dishonesty, defendant has not shown that trial counsel was ineffective for failing to impeach her with evidence of these offenses.

Similarly, defendant does not identify allegedly inconsistent statements made during the preliminary examination and trial. Defendant claims in his Standard 4 brief that the complainant testified at the preliminary examination that he lived with her at the home where the offenses occurred, and that she testified at trial that he had keys to her house. However, the complainant did not testify at preliminary examination that she and defendant lived together. Rather, she testified at the preliminary examination and at trial that although she and defendant had lived together at other addresses, they did not live together at the time of the offenses, and that defendant had never lived at that residence with her. She testified further that defendant spent the night at her home about once a week, but he would call before visiting and she would unlock the door for him. Because defendant's assertions about the complainant's inconsistent statements are not supported by the record, there has been no showing that defense counsel was ineffective for failing to impeach the complainant on this basis. Defendant's arguments do not overcome the presumption that counsel was effective. See *McGraw*, 484 Mich at 120.

Defendant's arguments that counsel was ineffective for failing to object to the admission of other acts evidence fails because, as indicated in section II. above, the objection would have been futile. Counsel is not ineffective for failing to make a futile objection. *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## IV. INSUFFICIENT EVIDENCE

Next, defendant argues in his Standard 4 brief that the evidence was insufficient to support his conviction for first-degree home invasion because he claims there was evidence to support his assertion that he and the complainant lived together at the address where the offenses occurred. As previously discussed, no evidence was presented to support this claim, and we are not persuaded by defendant's assertions to the contrary. Notably, the complainant testified that defendant "busted out" a window in order to enter her house after she refused to admit him, and one of the police officers testified that a window near the back door of the house was cracked. Defendant does not explain why, if he resided there, he was unable to enter the home through either the front or back doors. The complainant's testimony and reasonable inferences arising from the evidence were sufficient proof that defendant committed home invasion when he entered the complainant's residence. *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627

(2010) (holding that circumstantial evidence and reasonable inferences arising from that evidence may constitute proof of the elements of the crime).

Defendant also argues that there was insufficient evidence to support his convictions for felon in possession of a firearm and felony firearm. In lieu of argument, defendant cites *People v Ben Ray Williams*, 212 Mich App 607; 538 NW2d 89 (1995), and *People v Wolfe*, 440 Mich 508; 489 NW2d 748 (1992). In *Ben Ray Williams*, the police searched the defendant's residence while he was not at home, and found cocaine and a firearm in his bedroom. *Ben Ray Williams, supra*, at 608. This Court agreed with the defendant that he did not have actual or constructive possession of the firearm when it was found because "a person away from home cannot be deemed in possession of a firearm found in his house." *Id.* at 609, 611. However, our Supreme Court reversed this decision in *People v Burgenmeyer*, 461 Mich 431, 438-439; 606 NW2d 645 (2000), holding that the felony firearm statute prohibits actual or constructive possession of a firearm at the time the felony offense was committed, not at the time of arrest. Applying *Burgenmeyer* to the instant case, the proper question is whether defendant possessed a firearm at the time he committed the felony offenses. The complainant's testimony, in addition to the discovery by police officers of a handgun during defendant's arrest, was sufficient evidence that defendant possessed a gun during the commission of first-degree home invasion and unlawful imprisonment. In addition, the police officer's testimony that the gun was found near defendant during their search of the complainant's residence also established constructive possession.

Our decision in *Wolfe* also does not support defendant's argument. In *Wolfe*, police officers searched an apartment where an undercover officer had recently purchased crack cocaine and found the defendant and five other people, along with drug paraphernalia and a shotgun. *Wolfe, supra*, at 511. The defendant was arrested, searched, and found to be in possession of a beeper, a key to the back door of the apartment, and cash, including two $5 bills that had been used for the controlled cocaine purchase by the undercover officer. *Id.* at 512. Another man found in the apartment was also arrested and searched by police, and an extra shotgun shell was found on his person that matched the firearm found in the apartment. *Id.* The Supreme Court affirmed this Court's decision reversing the defendant's conviction for felony firearm, and concluded that there was no evidence beyond the defendant's presence in the apartment "that he had any role in obtaining the gun or in making it available during commission of the underlying felony." *Id.* at 527. Mere presence was "insufficient proof of possession of a firearm during the commission of a felony." *Wolfe, supra*, at 527. However, *Wolfe* is distinguishable from the instant case because the evidence established more than defendant's mere "presence;" it showed that he possessed a gun during the commission of the offenses. The complainant testified that defendant assaulted her with a gun while dragging her into her house, and that he held her at gunpoint and threatened to kill her while holding her in the house. Although only the complainant testified that she saw defendant with a gun, her testimony, along with police testimony that the gun and ammunition were found near defendant when he was arrested, was sufficient to show that defendant possessed the gun during the commission of the offenses. *Bennett, supra*, at 472.

## V. SPEEDY TRIAL

Defendant asserts in his Standard 4 brief that his rights were violated under the "180-day speedy trial rule." However, defendant also states that he recognizes that the 180-day rule,

which is set forth at MCL 780.131 and MCR 6.004(D)(1), is not applicable to him because it applies only to inmates in state prisons who are awaiting trial. Thus, defendant asserts that he is relying "upon the Federal and State Constitutions," as well as MCL 768.1, in support of his argument.

The right to a speedy trial is guaranteed by both the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. The right is also enforced by statute, MCL 768.1, and court rule, MCR 6.004(A). "[T]he federal and state constitutions and Michigan statutory law guarantee criminal defendants a speedy trial without reference to a fixed number of days." *People v McLaughlin*, 258 Mich App 635, 644; 672 NW2d 860 (2003). In *People v Cleveland Williams*, 475 Mich 245, 249, 261; 716 NW2d 208 (2006), our Supreme Court held that whether a defendant's right to a speedy trial has been violated is determined by the balancing of four factors set forth in *Barker v Wingo*, 407 US 514; 92 S Ct 2182; 33 L Ed 2d 101 (1972): "(1) the length of delay, (2) the reason for delay; (3) the defendant's assertion of the right, and (4) the prejudice to the defendant." When the delay between arrest and trial is less than 18 months, as in the instant case, the defendant bears the burden of proving prejudice. *People v Rivera*, 301 Mich App 188, 193; 835 NW2d 464 (2013). Defendant does not offer argument as to each of the factors, but asserts that he was clearly prejudiced by the delay and so is entitled to relief. We disagree.

### Length of Delay

Approximately 14 months elapsed between the date of defendant's arrest and the commencement of trial. Defendant asserts that a "delay approaching one year is presumptively prejudicial," citing *Doggett v United States*, 505 US 647; 112 S Ct 2686; 120 L Ed 2d 520 (1992). However, in *Doggett* the United States Supreme Court stated that "[d]epending on the nature of the charges, the lower courts have generally found postaccusation delay 'presumptively prejudicial' at least as it approaches one year." *Id.* at 652 n 1. But in *People v Cain*, 238 Mich App 95, 112; 605 NW2d 28 (1999), this Court held that "a delay of eighteen months or more . . . is presumed prejudicial and places a burden on the prosecutor to rebut that presumption." Because the length of the delay in the instant case was less than 18 months, this factor does not weigh in defendant's favor, and he must establish that he was prejudiced by the delay.

### Reason for Delay

Defendant asserts that his attorneys were at fault for failing to assert a speedy trial violation. The record does not indicate that defendant formally demanded a speedy trial as required by *Cain*, but the trial court indicated at a pretrial hearing that defendant had complained about the delay before the commencement of trial. The record also indicates that defendant asked the court to appoint new counsel, and affirmed that he understood that his case would take longer to go to trial if he proceeded with his request. Because defendant acquiesced to an additional period of delay before trial in order to obtain new counsel, we find that this factor weighs against him.

**Defendant's Assertion of His Right**

As aforementioned, defendant did not formally assert his right to a speedy trial prior to trial. In *Cain*, we held that a defendant must make a formal demand for a speedy trial in order to preserve his or her right for appellate review. *Cain, supra*, at 111. Defendant argues that this Court should find that he asserted his right to speedy trial based on his desire that the trial court's pretrial release order with electronic tether be enforced. Defendant further asserts that he informed both of his trial attorneys that he desired a speedy trial. However, the record indicates that defense counsel attempted to obtain defendant's pretrial release on electronic tether pursuant to the trial court's order, but the request was denied by jail officials based on their determination that defendant was not a candidate for pretrial release due to past violations. We do not agree with defendant that the court's order, or defendant's desire to enforce it, was somehow equivalent to the assertion of his right to a speedy trial. Similarly, we do not agree that defendant's claim that his trial counsel was aware of his desire for a speedy trial was sufficient to establish his assertion of this right. Moreover, even if defendant had formally asserted his right to a speedy trial in a timely fashion, he would still be required to prove prejudice because the delay between his arrest and trial was less than 18 months. *Rivera, supra*, at 193; *Cain, supra*, at 112. This factor does not weigh in defendant's favor.

**Prejudice to the Defendant**

A delay may prejudice either a defendant's person or defense. *Cain, supra*, at 114. "Prejudice to [the defendant's] person would take the form of oppressive pretrial incarceration leading to anxiety and concern. Prejudice to his defense might include key witnesses being unavailable," or otherwise being unable to adequately prepare his case. *People v Collins*, 388 Mich 680, 694; 202 NW2d 769 (1972). Defendant argues that his defense was prejudiced by the delay because he was unable to "gather" further witnesses and favorable evidence that his attorneys were unable or not willing to obtain. According to defendant, these witnesses included "neighbors to the home that was shared by the defendant and complainant," and a "hospital nurse's report" that defendant had once broken a window in the complainant's home to "rescue the unconscious complainant." Defendant also claims that he was prejudiced by his inability to obtain his choice of counsel due to his pretrial confinement. Defendant's assertions do not demonstrate that he was prejudiced by the delay.

Defendant claimed that trial counsel was ineffective for failing to call witnesses who could testify that he lived in the residence that were willing and available to testify. Thus, according to defendant, the delay did not affect his ability to secure witnesses who could support his claim that he could not have committed home invasion because he lived in the home. The supposed report of a "hospital nurse" on an unrelated matter in which defendant assisted the complainant during a medical emergency was not relevant to his defense. Regardless, this evidence was introduced at trial through the complainant's testimony that defendant had assisted her when she was unconscious by entering her home through a window. The nurse's report on this point would have been cumulative. Finally, defendant does not explain how his confinement prevented him from obtaining the counsel of his choice. Defendant's first counsel was retained, and he asked the court to replace him with appointed counsel. Without further explanation, it is unclear how defendant's pretrial incarceration prevented him from securing counsel. By itself, incarceration does not establish prejudice "unless there is evidence of impairment to the

defense." See *Cleveland Williams, supra*, at 264. Defendant has not established that his defense was prejudiced by the delay.

Defendant has also failed to demonstrate prejudice to his person as a result of the delay. Although he has asserted that the delay caused him anxiety, anxiety alone is insufficient to support a violation of the defendant's right to a speedy trial. *Collins*, 388 Mich at 694; *People v Gilmore*, 222 Mich App 442, 462; 564 NW2d 158 (1997).

## VI. JURY INSTRUCTIONS

At trial, defendant requested a jury instruction on third-degree home invasion. According to defendant, the instruction was appropriate because he was charged with committing domestic violence, a misdemeanor, during the home invasion. The trial court denied the request based on its finding that as a type of assault, domestic violence was specifically included as an element of first-degree home invasion, so an instruction on third-degree home invasion was not appropriate. On appeal, defendant argues that third-degree home invasion is a necessarily included lesser offense of first-degree home invasion, and that because there was evidence to support the lesser offense, the trial court erred by denying the instruction. We disagree, and conclude that the trial court properly instructed the jury on first-degree home invasion.

MCL 750.110a(2) sets forth the elements of first-degree home invasion:

> (2) A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

> (a) The person is armed with a dangerous weapon.

> (b) Another person is lawfully present in the dwelling.

MCL 750.110a(4) sets forth the elements of third-degree home invasion, in pertinent part, as follows:

> (4) A person is guilty of home invasion in the third degree if the person does either of the following:

> (a) Breaks and enters a dwelling with intent to commit a misdemeanor in the dwelling, enters a dwelling without permission with intent to commit a misdemeanor in the dwelling, or breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a misdemeanor.

"[A] requested instruction on a necessarily included lesser offense is proper if the charged greater offense requires the jury to find a disputed factual element that is not part of the lesser included offense and a rational view of the evidence would support it." *People v Cornell*, 466 Mich 335, 357; 646 NW2d 127 (2002). In *People v Wilder*, 485 Mich 35, 37; 780 NW2d 265 (2010), our Supreme Court held that in some circumstances, third-degree home invasion is a necessarily included lesser offense of first-degree home invasion. In the instant case, however, an instruction on third-degree home invasion as a lesser included offense was not appropriate because two undisputed elements of first-degree home invasion were present and they were not elements of third-degree home invasion: first, that defendant committed an assault or intended to commit an assault while in the dwelling; and second, that defendant was armed with a dangerous weapon and/or another person was lawfully present in the home. MCL 750.110a(2), (4). Defendant assaulted the complainant and she was lawfully present in the home when he entered it; thus, an instruction for third-degree home invasion was not appropriate because no disputed factual element was part of the greater charged offense that was not part of the lesser. *Cornell*, 466 Mich at 335. Defendant's contention that he was entitled to the instruction because the assault was the misdemeanor offense of domestic violence is not persuasive. Domestic violence is a crime of assault. MCL 750.81(2). Because assault is specifically included as an element of first-degree home invasion, the trial court's instructions were proper. See MCL 750.110a(2).

## VII. OVS 8 AND 13

Defendant argues that the trial court erred in scoring Offense Variable (OV) 8 at 15 points because the basis for the trial court's decision was unlawful imprisonment for which he was separately charged, convicted and sentenced. Defendant argues further that the offense variables should be scored based only on the sentencing offense unless otherwise provided in the particular variable being scored, citing *McGraw*, 484 Mich at 133. We do not agree that this portion of the Court's opinion in *McGraw* is applicable to the instant case.

In *McGraw*, our Supreme Court considered "whether the offense variables should be scored solely on the basis of conduct occurring during the sentencing offense or also using conduct occurring afterward." *McGraw*, 484 Mich at 122. The defendant in *McGraw* broke and entered into an unoccupied retail store and stole merchandise; after leaving the scene of that offense, the defendant was later arrested following a police chase. *Id.* The defendant pleaded guilty to three counts of breaking and entering a building with intent to commit larceny in exchange for the dismissal of other charges, including fleeing and eluding the police. *Id.* at 122-123. The trial court scored OV 9, number of victims, MCL 777.39, based on its finding that the defendant had put at least two victims in danger while he was fleeing from the police. *Id.* at 123. The defendant argued that "only conduct occurring during the offense of which the defendant was convicted may be considered." *McGraw, supra*, at 124. The Court agreed, and held "that a defendant's conduct after an offense is completed does not relate back to the sentencing offense for purposes of scoring offense variables unless a variable specifically instructs otherwise;" "[o]ffense variables must be scored giving consideration to the sentencing offense alone, unless otherwise provided in the particular variable." *Id.* at 122, 133-134.

*McGraw* does not prevent a trial court from scoring the offense variables based on conduct that occurred simultaneously with the charged offense, and defendant held the complainant at gunpoint during the commission of the home invasion. In addition, although the

-10-

trial court did not explain its reasons for scoring the variable on the record, we find that a score of 15 points for OV 8 was justified based on the fact that defendant asported the victim to a place of greater danger when he dragged her back into the house after she attempted to flee. MCL 777.38(1)(a). Because the evidence supported the trial court's score of 15 points for OV 8, defendant is not entitled to relief on this issue.

Defendant also argues that the trial court improperly scored 25 points for OV 13, which addresses a continuing pattern of criminal behavior. MCL 777.43. Twenty-five points should be scored where "the offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1)(c). Defense counsel argued at sentencing that the score was inappropriate because this variable was intended to apply to "more than one victim and more than one [criminal] transaction" and in the instant case, all of the offenses flowed out of a single transaction with a single victim. On appeal, defendant also argues that to the extent the trial court considered his prior felony conviction for possession of a controlled substance, MCL 333.7403(2)(a)(iv), in scoring OV 13, its decision was improper because his prior offense was not a crime against a person as required by the statute for scoring of the variable. We conclude that 25 points was an appropriate score for OV 13.

The record does not indicate that the trial court considered defendant's conviction for possession of a controlled substance in scoring OV 13. The court stated that its decision was based on the fact that "[t]here was more than three . . . felonious acts right in this case . . . . Let's try home invasion first degree. Let's try assault with a dangerous weapon. Let's try unlawful imprisonment. . . . not to mention the felony firearm and the felon in possession." Thus, defendant's argument that the trial court may have improperly considered his controlled substance conviction is not supported by the record.

The trial court did not err when it based the score for OV 13 on defendant's convictions in the instant case. In *People v Gibbs*, 299 Mich App 473, 487-488; 830 NW2d 821 (2013), we held that multiple concurrent offenses arising from the same incident are properly used in scoring OV 13. The defendant in *Gibbs* participated in an armed robbery involving three victims. *Id.* at 478-479. The sentencing court scored OV 13 at 25 points based on the defendant's convictions for two counts of armed robbery and one count of unarmed robbery. *Id.* at 487. We rejected the defendant's argument that 25 points were not appropriate because "his convictions arose out of one incident," and concluded that multiple concurrent offenses arising from the same incident are properly used in scoring OV 13. *Id.* at 487-488. We also noted that MCL 777.43(1)(c), unlike other subsections of the statute, did not limit the "trial court's ability to score for more than one instance arising out of the same criminal episode." *Gibbs, supra*, at 488. Defendant's argument that his case is distinguishable from *Gibbs* because the latter case involved multiple victims is not persuasive. There is no such requirement in the language of the statute, and we did not read this requirement into the statute in *Gibbs*. The trial court properly scored 25 points for OV 13.

## VIII. COURT COSTS

Defendant does not challenge the court's authority to impose costs, but in his Standard 4 brief asserts that he cannot afford the $520 in court costs that were imposed in this case. The court also assessed a late fee of $104, for a total of $624. According to the record, defendant has paid $166.34 and owes a balance of $457.66.

MCL 769.1k(1) authorizes imposition of costs on defendants who have pleaded or been found guilty. The statute does not require the court to determine whether a defendant has the ability to pay the costs. According to the record, the trial court ordered defendant to pay the $130 crime victim fee, as required by MCL 780.905(1)(a). The trial court also imposed minimum state costs for each of defendant's five felony convictions, as well as for his misdemeanor conviction for domestic violence, totaling $390. See MCL 769.1j(1)(a)-(b) (providing that a court may impose minimum state costs of $68 for felony convictions, and $50 for misdemeanors). In *People v Konopka*, 309 Mich App 345, 359-360; 869 NW2d 651 (2015), we held that where costs are not authorized by statute, the trial court must establish a factual basis for the costs imposed so that this Court may "determine whether the costs imposed were reasonably related to the actual costs incurred by the trial court, as required by MCL 769.1k(1)(b)(*iii*)." Because the defendant in *Konopka* challenged the lack of reasoning for the costs imposed, we remanded to the trial court to establish a factual basis for the costs and to give the defendant "the opportunity to challenge the reasonableness of the costs imposed." *Id.* at 360. In the instant case, the court's imposition of costs was authorized by statute, so defendant is not entitled to a remand for a hearing on the reasonableness of the costs under *Konopka*.

Regarding the late penalty, pursuant to MCL 600.4803(1), "[a] late penalty may be waived by the court upon the request of the person subject to the late penalty." It is not clear from defendant's affidavit whether he has requested waiver of the late fee from the trial court. However, the statute permits him to do so.

Affirmed.


/s/ Deborah A. Servitto
/s/ Henry William Saad
/s/ Colleen A. O'Brien