# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

MILO LEROY JOHNSON,

      Defendant-Appellant.

UNPUBLISHED
May 3, 2016

No. 324567
Macomb Circuit Court
LC No. 13-004736-FC

Before: O'CONNELL, P.J., and MARKEY and O'BRIEN, JJ.

PER CURIAM.

Defendant, Milo Leroy Johnson, appeals as of right his convictions, following a jury trial, of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a and MCL 750.529, and possessing a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Johnson to serve concurrent terms of 170 to 360 months' imprisonment for both his robbery and conspiracy convictions, and a consecutive term of two years' imprisonment for his felony-firearm conviction. We affirm Johnson's convictions, but remand his sentence for further proceedings consistent with *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015).

## I. BACKGROUND FACTS

According to Robert Gutch, he and Johnson conspired to rob an El Charro restaurant in St. Clair Shores. Gutch stated that he was testifying against Johnson in exchange for a plea agreement dismissing a felony-firearm charge. Gutch and Johnson were previously coworkers at the restaurant for about a year, and Johnson was upset that the restaurant had fired his aunt, who had worked there for 18 years. Gutch testified that Johnson's aunt was like a mother to him. Based on his former employment, Gutch believed it would be "easy" to rob the restaurant.

Gutch testified that he used his girlfriend's graduation party as an alibi. Gutch texted Johnson to confirm that he was on his way to the graduation party and, when Johnson arrived, Gutch announced that he was going to a party store to purchase alcohol. After stopping at the party store to purchase a case of beer, he and Johnson drove to a nearby apartment complex and jumped a fence to gain access to the restaurant. Gutch carried a duffel bag into the restaurant, and Johnson carried a silver gun with a black handle. However, Gutch saw that the safe was closed, and Johnson thought that the cashier had hit the panic button, so they fled.

Christine Shock, an employee, testified that as she was preparing to leave the restaurant after it closed, she was stopped by two masked men wearing heavily layered black clothing. Steven Sellars, the restaurant's manager, testified that he saw a masked gunman tell Shock not to touch the alarm button, and the gunman instructed the employees to "get down." On the day of the robbery, the employees had already counted the money and deposited it into the safe, but normally the safe would have been open at that time. Sellars opined that the robbers were familiar with El Charro's procedures.

According to St. Clair Shores Police Department Detective Gordon Carrier, he believed the robbery was an "inside job" and began to interview present and former employees. When Carrier interviewed Gutch, Gutch was very nervous, and after Carrier's investigation showed that Gutch lied about some of the facts of the evening, Carrier obtained Gutch's cell phone records. The phone records included text messages and phone calls placed between Gutch and Johnson's cell phones. Gutch eventually confessed to the robbery and identified Johnson as his accomplice.

Federal ATF Agent Stan Brue testified as an expert in forensic cellular analysis and tower mapping. According to Agent Brue, analysis of cell tower routing indicated that from 10:19 to 10:21 p.m., Johnson and Gutch's phones were near the graduation party. There were no calls between 10:21 and 10:49 p.m., when a six-minute outgoing call from Johnson's phone began "just to the south" of the restaurant. Agent Brue also commented on the calling pattern between Johnson and Gutch, noting that 23 of their 26 calls took place on the day of the robbery, and the longest period of phone inactivity was during the robbery itself.

## II. FAILURE TO DISCLOSE EXCULPATORY EVIDENCE

Johnson first argues that the prosecution violated *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963), by failing to disclose the entirety of Gutch's plea agreement before trial. We disagree.

This Court reviews for an abuse of discretion the trial court's ruling on a motion for a new trial. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). The trial court abuses its discretion when its outcome falls outside the range of principled outcomes. *People v Duncan*, 494 Mich 713, 722-723; 835 NW2d 399 (2013).

In *Brady*, the United States Supreme Court held that "[d]efendants have a due process right to obtain evidence in the possession of the prosecutor if it is favorable to the accused and material to guilt or punishment." *People v Stanaway*, 446 Mich 643, 666; 521 NW2d 557 (1994); see *Brady*, 373 US at 87. In order to establish a *Brady* violation, the defendant must show that (1) the State possessed evidence favorable to the defendant, (2) the defendant did not possess and could not have obtained the evidence with reasonable diligence, (3) the prosecutor suppressed the evidence, and (4) with the evidence, there was a reasonable probability that the result of the defendant's proceedings would have been different. *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007).

In this case, Gutch testified at the outset of the trial that he had pleaded guilty to armed robbery and conspiracy to commit armed robbery, and he had agreed to testify at Johnson's trial

as part of a plea deal in exchange for the prosecution dismissing a felony-firearm charge. While the trial in this case was in progress, the prosecution indicated that Gutch had filed a motion to withdraw his plea in the hopes of reinstating a previous plea offer, in which he would plead guilty to a single charge of unarmed robbery for his testimony. Defense counsel agreed that, in order to apprise the jury of this information, the prosecution would recall Gutch and elicit the details of Gutch's pending motion. Defense counsel stated that if the issue would be addressed, "then it would be fine by me." The next day, the trial court allowed the prosecution to recall Gutch to elicit details of his motion, and defense counsel cross-examined Gutch.

A waiver is an intentional abandonment or relinquishment of a known right. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). A defendant waives a right by expressly approving of the trial court's action. *Id*. A defendant's express approval of the trial court's action "constitutes a waiver that *extinguishes* any error." *Id*. In this case, defense counsel agreed with the proposed procedure to recall Gutch and question him about the further details of the ongoing proceedings regarding his plea. Accordingly, we conclude that Johnson has waived this issue.

We also reject Johnson's related ineffective assistance of counsel claim. "To demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *People v Nix*, 301 Mich App 195, 207; 836 NW2d 224 (2013). "To demonstrate prejudice, a defendant must show the probability that, but for counsel's errors, the result of the proceedings would have been different." *Id*.

In this case, the jury was fully informed about Gutch's original plea agreement, his pending motion to withdraw his plea, and his discussions with the prosecutor. Because the full evidence regarding Gutch's plea negotiations were disclosed to the jury, there is no basis for concluding that defense counsel's performance fell below an objective standard of reasonableness or that the results of the proceeding would have been different.

## III. CELL TOWER EVIDENCE

Johnson contends that defense counsel was ineffective by failing to challenge Agent Brue's expert cell phone testimony or calling a cell phone expert to testify in Johnson's defense. We disagree.

We reiterate that, "[t]o demonstrate ineffective assistance of counsel, a defendant must show that his or her attorney's performance fell below an objective standard of reasonableness under prevailing professional norms and that this performance caused him or her prejudice." *Nix*, 301 Mich App at 207. Defense counsel's decisions to call and investigate witnesses are matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Counsel has wide discretion in matters of trial strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266 (2012). The failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

Johnson contends that defense counsel rendered ineffective assistance by failing to challenge Agent Brue's testimony. Johnson specifically contends that cell phone evidence is "junk science" and that Agent Brue's testimony was not based on reliable principles and methods.

MRE 702 provides the circumstances under which expert testimony is admissible:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In essence, the court rule requires "a court evaluating proposed expert testimony [to] ensure that the testimony (1) will assist the trier of fact to understand a fact in issue, (2) is provided by an expert qualified in the relevant field of knowledge, and (3) is based on reliable data, principles, and methodologies that are applied reliably to the facts of the case." *People v Kowalski*, 492 Mich 106, 120; 821 NW2d 14 (2012).

In this case, Agent Brue's testimony satisfied each of those three requirements. First, the record reflects that Agent Brue's testimony regarding the functions and methodology related to cell phone towers, derivative tracking, and techniques for locating or plotting origins of cell phone calls through cell phone records assisted the jury in understanding a factual dispute at issue. Second, the record reflects that Agent Brue's experience, including more than five years of analyzing approximately 1,800 "cell call detail records" and 100 hours of training "centered on the architecture of cellular networks," constituted sufficient experience for him to be qualified as an expert in this specific field of knowledge. Third, Agent Brue's testimony, as reflected in the record, supports a conclusion that his opinion was based on reliable data, principles, and methodologies that were applied reliably in this case. While defendant claims on appeal that the underlying data, principles, and methodologies constitute "junk science," there is nothing available to us that supports such a conclusion. Indeed, there is no indication in the record that the data, principles, and methodologies at issue are faulty, and we are unable to find any legal authority that would otherwise support that position. Defense counsel is not ineffective for falling to make futile challenges. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010).

Furthermore, federal courts have found cell-tower tracking evidence to be sufficiently reliable when the testimony concerns a defendant's general location. See *United States v Machado-Erazo*, 950 F Supp 2d 49 (D DC, 2013) (defendants located in a general area); *United States v Reynolds*, 626 Fed Appx 610 (CA 6, 2015) (defendant not located in a general area). Cases in which cell tower evidence has been rejected as unreliable in federal cases are cases in which an agent used cell tower data to attempt to pinpoint a *specific* location. See *United States v Evans*, 892 F Supp 2d 949 (ND Ill, 2012) (a kidnapper's location); *United States v Sepulveda*, 115 F3d 882 (CA 11, 1997) (a store's location). Here, Agent Brue did not testify that Johnson was located in any *specific* location; rather, he testified that the cell tower evidence corroborated

other testimony that defendant was in the *general* area. Because Agent Brue's testimony was of a type that federal courts have found to be reliable, counsel may have reasonably decided to focus his attention and resources on other areas, such as attacking Gutch's credibility. Consequently, we conclude that defense counsel's failure to challenge Agent Brue's testimony was objectively reasonable in this case. Defense counsel is not ineffective for falling to make futile challenges.

Additionally, we conclude that counsel's performance did not prejudice Johnson. A defendant was prejudiced if, but for defense counsel's errors, the result of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670; 821 NW2d 288 (2012). In this case, defendant's accomplice's testimony, even in light of his plea agreement, directly implicated defendant. Evidence involving the location of his phone simply corroborated that testimony. Further, even without the cell tower evidence, Agent Brue's testimony regarding the telephone calls placed between Johnson's and Gutch's phones was proper. Thus, we are not convinced that, had counsel challenged the cell tower evidence, the results would have been different.

Defendant's argument that defense counsel's failure to present expert testimony refuting Agent Brue's testimony fails for similar reasons. Defense counsel's decision to call or not call a witness is a matter of trial strategy, *Horn*, 279 Mich App at 39, and this Court will not substitute its judgment for that of counsel on appeal, *Heft*, 299 Mich App at 83. As stated above, the failure to present a witness can constitute ineffective assistance only where it deprives the defendant of a substantial defense. *Payne*, 285 Mich App at 190. Stated simply, there is nothing in the record, both before the trial court and before this Court, to support defendant's position. While defendant speculates that defense counsel could have presented an expert to refute Agent Brue's testimony and that doing so would have impacted the jury's decision, no support, legal, factual, or otherwise, exists to support his speculation. Defendant does not provide, and we cannot find, anything to support the idea that such an expert exists, much less the idea that such an expert's testimony would have refuted that of Agent Brue and led to a different outcome. Accordingly, we also conclude that defense counsel's failure to present expert testimony in an attempt to refute that of Agent Brue did not constitute ineffective assistance of counsel and was not prejudicial.

## IV. SENTENCING

Johnson contends that he is entitled to further proceedings because his sentence was based on impermissible judicial fact-finding under *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013), as extended by *Lockridge*. We agree.

In this case, the trial court assessed Johnson 15 points for the aggravated use of a weapon under offense variable (OV) 1, 5 points for the use of a lethal weapon under OV 2, and 10 points for the number of victims under OV 9.

The trial court must assess 15 points under OV 1 if "[a] firearm was pointed at or toward a victim[.]" The jury was only required to find beyond a reasonable doubt that Johnson was armed with a weapon—not that he pointed it at a victim. See *People v Gibbs*, 299 Mich App 473, 490-491; 830 NW2d 821 (2013). Accordingly, we conclude that Johnson's OV 1 score was

based on judge-found facts. Also, the prosecution concedes that the trial court's assessment under OV 9 was based on judge-found facts.

Armed robbery is a class A offense. MCL 777.16y. Defendant received a total OV score of 30 points that, combined with his PRV score, placed him in the F-II cell of the sentencing grid, with a recommended sentence range of 126 to 210 months. MCL 777.62. However, without considering Johnson's OV 1 and OV 9 scores, he would have been in the F-I cell, with a recommended sentence range of 108 to 180 months. Because Johnson was sentenced on the basis of judge-found facts, we conclude that he has established a showing of plain error under *Lockridge*. See *Lockridge*, 498 Mich at 395.

We affirm Johnson's convictions, but we remand for the trial court to determine whether it would have imposed a materially difference sentence under the procedure described in *Lockridge*. We do not retain jurisdiction.

/s/ Peter D. O'Connell
/s/ Jane E. Markey
/s/ Colleen A. O'Brien