*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
May 13, 2026
9:57 AM

Plaintiff-Appellee,

v

No. 369742
Muskegon Circuit Court
LC No. 2020-003270-FC

JEFFREY CARL WADE,

Defendant-Appellant.

Before: MURRAY, P.J., and REDFORD and RICK, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial conviction of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(a). The trial court sentenced defendant as a third-offense habitual offender, MCL 769.11, to serve 15 to 25 years' imprisonment. We affirm.

## I. FACTUAL BACKGROUND

This case arises from allegations that defendant sexually abused the complainant, JC, during her childhood. At the time of trial, JC was 27 years old. When she was approximately 11 years old, she and her siblings moved in with her older sister, Savannah Wade, due to poor conditions in their mother's home. Savannah was married to defendant. JC described Savannah as "a second mom" and testified that she and defendant both spent time with her during her childhood.

Regarding the allegations of sexual abuse, JC first described an incident in which defendant called her into his bedroom while he was masturbating. She stated that defendant asked her to lie next to him and "play with" herself. JC testified that she told defendant she did not feel comfortable, did not want to do that, and knew it was not right. JC initially recalled that Savannah and defendant's newborn son was asleep in a crib in the same room. JC testified that defendant did not physically touch her during that incident. On cross-examination, JC agreed that Savannah was not home at the time but that her younger brother, who was then about 13 years old, was present. JC also testified on cross-examination that she did not recall telling Savannah about that incident at the time.

-1-

When JC was about 12 years old, the family moved to a home in Muskegon, Michigan. JC testified that defendant's conduct escalated after the move. She described a pattern of abuse that included kissing, grinding, oral sexual contact, and digital penetration. In addition, JC testified that the conduct eventually progressed to penile-vaginal penetration, though she at times described it as defendant merely "trying" to have sex with her. According to JC, the abuse ended after she disclosed the conduct to Savannah during a conversation about defendant's fidelity.

Detective Kyle Hall investigated the allegations years later. He testified that delayed-disclosure cases often lack physical evidence and instead rely on witness interviews. He interviewed JC, defendant, Savannah, and other family members. According to Detective Hall, JC reported multiple incidents of sexual abuse consistent with her trial testimony. Thomas Cottrell, a licensed master social worker, likewise testified as an expert in child sexual abuse dynamics. He explained that delayed disclosure is common and that a wide range of behaviors may be consistent with abuse.

Savannah testified for the defense. She stated that JC maintained contact with the family despite the allegations. She further testified that JC once asked defendant to walk her down the aisle at her wedding, though defendant declined. Savannah also indicated that JC later did not want defendant to attend the wedding. She stated that JC continued to have a complicated but ongoing relationship with the family.

Following a two-day trial, the jury found defendant guilty of one count of CSC-I. Defendant was sentenced as earlier described. Defendant subsequently moved for a new trial, arguing that the jury was pressured to reach a verdict after beginning deliberations late in the day. The trial court denied the motion. This appeal followed.

II. ANALYSIS

A. VERDICT FORM

Defendant argues that the jury verdict form was inadequate because it allowed the jury to convict him of CSC-I without specifying his and JC's ages or the form of sexual penetration. He thus maintains that he was deprived of a unanimous verdict and a properly instructed jury. We disagree.

This Court analyzes the verdict form as a part of the jury instructions. *People v Eisen*, 296 Mich App 326, 330; 820 NW2d 229 (2012). "A party must object or request a given jury instruction to preserve the error for review." *People v Sabin (On Second Remand)*, 242 Mich App 656, 657; 620 NW2d 19 (2000). Here, defense counsel stated that he had no objection to the instructions and verdict form. "When the trial court asks whether a party has any objections to the jury instructions and the party responds negatively, it is an affirmative approval of the trial court's instructions." *People v Miller*, 326 Mich App 719, 726; 929 NW2d 821 (2019). Defense counsel's affirmative approval constitutes waiver of the issue. *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id*. (quotation marks and citation omitted). We thus decline to further address the issue.

Defendant additionally argues that defense counsel was ineffective for failing to object to the verdict form. Defendant did not move for a new trial or a *Ginther*[1] hearing below, nor did he move to remand in this Court; thus, the issue is unpreserved. *People v Foster*, 319 Mich App 365, 390; 901 NW2d 127 (2017); *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020). Review of this matter is limited to errors apparent on the record. *Foster*, 319 Mich App at 390.

To establish a claim of ineffective assistance of counsel, a defendant must show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). Counsel is presumed to be effective, and defendant bears the burden of proving otherwise. *People v Isrow*, 339 Mich App 522, 531; 984 NW2d 528 (2021). Defendant also bears the burden to establish the factual predicate for his claim. *People v Hoag*, 460 Mich 1, 6; 594 NW2d 57 (1999).

This Court considers challenges to jury instructions "in their entirety to determine whether the trial court committed error requiring reversal." *Eisen*, 296 Mich App at 330 (quotation marks and citation omitted). However, this Court will not reverse if the instructions "fairly presented the issues to be tried and sufficiently protected the defendant's rights." *Id*. (quotation marks and citation omitted). Here, the jury was instructed on the elements of first-degree criminal sexual conduct, including that (1) defendant engaged in a sexual act involving penetration, and (2) the complainant was under 13 years of age at the time of the act. These instructions tracked the statutory elements and properly defined the prosecution's burden. See *People v Duenaz*, 306 Mich App 85, 106; 854 NW2d 531 (2014).

The verdict form, in turn, required the jury to determine whether defendant was guilty or not guilty of the charged offense. Although the form did not require jurors to identify the specific act of penetration or the precise factual theory supporting the age element, juror unanimity is required only as to the ultimate issue of guilt, not as to the particular means by which a single offense was committed. *People v Cooks*, 446 Mich 503, 511-512; 521 NW2d 275 (1994); *People v Chelmicki*, 305 Mich App 58, 68; 850 NW2d 612 (2014). Consistent with these principles, different forms of sexual penetration constitute alternative means of committing CSC rather than separate offenses requiring special unanimity findings. See *People v Gadomski*, 232 Mich App 24, 30-32; 592 NW2d 75 (1998). Likewise, where multiple acts are presented as part of a continuing course of conduct supporting a single charge, a general verdict is sufficient, unless there is evidence of a genuine risk of juror confusion or disagreement about materially distinct acts. *Cooks*, 446 Mich at 512-513.

Here, the prosecution presented evidence of repeated sexual abuse occurring over a defined time period, all satisfying the same statutory elements of CSC-I. The jury was not asked to choose between legally distinct offenses, nor did the instructions create a risk that some jurors convicted on one theory while others relied on a separate theory. Moreover, there is no indication that the jury was confused or that the verdict form prevented the jurors from fairly considering the case.

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

The instructions adequately framed the elements, and the verdict form properly allowed the jury to render a determination of guilt or innocence on the charged offense.

Based on the foregoing, defendant cannot establish ineffective assistance of counsel. Given that the verdict form was legally sufficient, any objection would have been meritless. Counsel is not deficient for failing to make a meritless objection. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010). Defendant thus cannot establish the factual predicate for his claim, nor can he show that he was prejudiced by defense counsel's performance. *Hoag*, 460 Mich at 6; *Trakhtenberg*, 493 Mich at 51.

## B.  PROSECUTORIAL MISCONDUCT

Defendant next argues that the prosecutor engaged in misconduct by improperly vouching for JC's credibility, both through the elicitation of testimony from Detective Hall and Thomas Cottrell, and through statements made during closing argument. We disagree.

Defendant failed to object to the prosecutor's remarks at trial. Therefore, this issue is reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). Under that standard, defendant must establish that an error occurred, that the error was plain, and that it affected the outcome of the proceedings. *Id*. Even then, reversal is warranted only if the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted). Claims of prosecutorial misconduct are evaluated on a case-by-case basis by examining the prosecutor's conduct in context and in light of the entire record. *People v Bahoda*, 448 Mich 261, 267; 531 NW2d 659 (1995). However, reversal is generally unwarranted where a timely curative instruction could have alleviated any prejudice. *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).

Generally, "[p]rosecutors are accorded great latitude regarding their arguments" and may argue the evidence and all reasonable inferences arising from it as they relate to the prosecution's theory of the case. *Bahoda*, 448 Mich at 282 (quotation marks and citation omitted). However, a prosecutor may not vouch for the credibility of a witness by implying special knowledge that the witness is testifying truthfully or by placing the prestige of the government behind the witness. *Id*. at 276. The critical distinction is between arguing from the evidence that a witness is credible, which is permissible, and suggesting that the prosecutor possesses some independent basis for believing the witness, which is not. *Id*.

Defendant claims that the prosecutor asserted that JC was telling the truth and that "this is what happened to her." According to defendant, the prosecutor's statements invited the jury to accept JC's testimony based on the prosecutor's personal endorsement rather than an independent evaluation of the evidence. Viewed in context, however, the prosecutor's remarks did not constitute improper vouching. JC's credibility was the central issue at trial. The prosecutor's argument was directed at explaining why the jury should find her testimony credible, based on the evidence presented. The prosecutor's statements that JC was telling the truth were not assertions of personal knowledge or authority. Instead, they were rhetorical conclusions drawn from the evidence. The prosecutor was permitted to make such arguments. *Bahoda*, 448 Mich at 282. Additionally, the prosecutor's remarks were responsive to the defense theory that JC's allegations

were fabricated or unreliable. The prosecutor offered the commentary as a fair reply to defense counsel's arguments. The prosecutor did not suggest that she possessed information outside the record confirming JC's account of the events at issue, nor did she rely on the prestige of her office to bolster JC's credibility. Instead, the remarks were tied to the evidence and reasonable inferences arising from it. *Id.*

Detective Hall's testimony likewise did not amount to improper vouching. Detective Hall testified generally regarding patterns of delayed disclosure in sexual abuse cases. He acknowledged that delayed reporting is common and that false accusations can occur. This type of testimony is admissible to assist the jury in understanding behaviors that might otherwise seem counterintuitive. The statements did not constitute an opinion that JC was telling the truth. See *People v Peterson*, 450 Mich 349, 363; 537 NW2d 857 (1995).[2] Nothing in Detective Hall's testimony indicated that he had special knowledge about JC's truthfulness or that he was endorsing her credibility.

The same is true of Cottrell's testimony. Cottrell was qualified as an expert in child sexual abuse dynamics, including disclosure patterns and offender behavior. He testified in general terms that disclosure of abuse is often delayed and explained a range of reasons why victims may not immediately report the abuse. Critically, nothing in Cottrell's testimony directly opined on JC's credibility or asserted that the abuse in this case occurred. Instead, his testimony was limited to general principles to assist the jury in evaluating the evidence.

Defendant additionally takes issue with the fact that the prosecutor briefly referenced Cottrell in closing argument, noting that his testimony helped the jury understand why victims behave as they do, and that JC's behavior was "similar to other children that have been sexually assaulted." This did not cross the line into improper vouching. Viewed in context, the prosecutor did not suggest that Cottrell had personal knowledge of JC or that he was attesting to her truthfulness. Instead, the prosecutor permissibly argued that JC's conduct was consistent with the general patterns described in Cottrell's expert testimony. This type of argument is allowed because it asks the jury to draw an inference from properly admitted expert testimony rather than relying on the prosecutor's personal belief or undisclosed information. *People v Dobek*, 274 Mich App 58, 66; 732 NW2d 546 (2007); *Bahoda*, 448 Mich at 282.

Even were we to agree with defendant's argument, defendant cannot establish plain error requiring reversal. The remarks at issue were made in the course of a broader argument grounded in the evidence. Further, any potential prejudice was properly cured by a timely instruction reminding the jury that it alone determines the credibility of witnesses. *Watson*, 245 Mich App at 586. The record likewise does not support a conclusion that the outcome of the trial was affected, given JC's detailed testimony, her prior disclosures, and the supporting contextual evidence presented by the prosecution. Accordingly, defendant has failed to demonstrate that the prosecutor's remarks constituted plain error affecting his substantial rights.

---

[2] Although *Peterson* involved expert testimony, its core principle applies: testimony describing general victim behavior is permissible so long as it does not opine on credibility. *Peterson*, 450 Mich at 352-353, 373-374.

Defendant alternatively contends that defense counsel rendered ineffective assistance by failing to object to the prosecutor's alleged vouching. As earlier described, establishing a claim of ineffective assistance of counsel requires a defendant to show "that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Trakhtenberg*, 493 Mich at 51. The prosecutor's remarks did not constitute improper vouching. They were permissible arguments grounded in the evidence and reasonable inferences arising from it. *Bahoda*, 448 Mich at 282. Because an objection on that basis would have lacked merit, counsel's failure to object did not fall below an objective standard of reasonableness. See *Ericksen*, 288 Mich App at 201.

## C. ADMISSIBILITY OF EVIDENCE

Defendant argues that the trial court abused its discretion by admitting testimony regarding delayed disclosure and victim behavior, as well as a text message including song lyrics about abuse and survival. We disagree.

A trial court's decision to admit evidence is reviewed for an abuse of discretion. *People v Mahone*, 294 Mich App 208, 212; 816 NW2d 436 (2011). "An abuse of discretion occurs when the court chooses an outcome that falls outside the range of reasonable and principled outcomes." *Id*. Preliminary questions of law, including whether a rule of evidence precludes admissibility, are reviewed de novo. *People v Denson*, 500 Mich 385, 396; 902 NW2d 306 (2017). "A trial court necessarily abuses its discretion when it admits evidence that is inadmissible as a matter of law." *Id*.

Under MRE 401, evidence is relevant if it has "any tendency" to make the existence of a fact of consequence more or less probable. MRE 402 provides that all relevant evidence is admissible unless otherwise excluded by rule or law. Once relevance is established, exclusion is appropriate if the danger of unfair prejudice substantially outweighs the probative value of the evidence. MRE 403.

Here, the challenged evidence included testimony from Cottrell explaining delayed disclosure and victim behavior. The evidence was relevant because it assisted the jury in evaluating JC's credibility and understanding conduct that might otherwise appear inconsistent with abuse. Such evidence is admissible where it provides context for a complainant's behavior that might otherwise be misunderstood by lay jurors. See *Peterson*, 450 Mich at 373; *People v Beckley*, 434 Mich 691, 725-726; 456 NW2d 391 (1990). Further, the defense theory centered on attacking JC's credibility and emphasized the delay in reporting and perceived inconsistencies in JC's recollection of the abuse. Viewed in context, explanatory testimony regarding delayed disclosure directly rebutted defendant's argument that JC's delay in reporting the abuse meant she was not a credible witness. *Mahone*, 294 Mich App at 213-214.

The same principles support the admission of a text message exchange in which Savannah sent JC a link to a song accompanied by language referencing "me and dad, you and [defendant]," along with lyrics from a song describing abuse, harm, and survival. Although defendant characterizes this evidence as irrelevant and inflammatory, the message was probative of the relationship between the parties. It was also probative of Savannah's understanding of, and

response to, JC's allegations against defendant. Moreover, the text message had independent impeachment value. At trial, Savannah denied knowledge of or acquiescence in any abuse. The content and context of the message, particularly its alignment of familial relationships with themes of victimization, permitted a reasonable inference that Savannah had at least contemplated the possibility that defendant abused JC. As such, the message was relevant to assessing Savannah's credibility. See *People v Spaulding*, 332 Mich App 638, 660; 957 NW2d 843 (2020) ("Credibility of a witness is almost always at issue, and, thus, evidence bearing on that credibility is always relevant.").

Nor did the inclusion of song lyrics render the evidence inadmissible under MRE 403. Although the lyrics referenced themes of trauma and survival, they were not introduced for their emotional impact in the abstract, but as part of a specific communication between the parties. The probative value of that communication, which demonstrated the nature of the relationship and potentially contradicting Savannah's testimony, was not substantially outweighed by any danger of unfair prejudice. Further, the risk that the jury would decide the case on an improper, emotional basis was minimal, particularly given that the message was tied directly to the factual dispute before the jury.

All relevant evidence is, by its nature, prejudicial. Evidence need only be excluded if it tends to inject "considerations extraneous to the merits of the lawsuit, e.g., the jury's bias, sympathy, anger, or shock" or if "there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Thurmond*, 348 Mich App 715, 730-731; 20 NW3d 311 (2023) (quotation marks and citations omitted). The evidence at issue, including the text message, was not inflammatory in the sense contemplated by MRE 403 and did not encourage the jury to decide the case on an improper basis. Instead, it bore directly on credibility and the factual circumstances of the alleged abuse. Accordingly, the trial court did not abuse its discretion by admitting the challenged evidence.

## D. RAPE SHIELD

Defendant additionally argues that the trial court's exclusion of evidence suggesting that JC had previously been sexually assaulted by another individual violated his constitutional right to present a defense and to confront the witnesses against him. Defendant contends that the evidence was necessary to challenge JC's credibility and to provide an alternative explanation for her allegations. We disagree.

This Court reviews a trial court's evidentiary decisions for an abuse of discretion. *Mahone*, 294 Mich App at 212. "[A] trial court's construction of a statute, such as the rape-shield statute, and interpretation of constitutional issues, such as the right to confrontation, are questions of law that are reviewed de novo." *People v Butler*, 513 Mich 24, 29; 6 NW3d 54 (2024).

The trial court did not abuse its discretion in excluding the proffered evidence because it was barred by Michigan's rape-shield statute, MCL 750.520j. Michigan's rape-shield statute reflects a "legislative determination" that, in the vast majority of cases, evidence of a complainant's prior sexual conduct is not legally relevant and must be excluded. *People v Hackett*, 421 Mich 338, 345-346; 365 NW2d 120 (1984). The statute provides that such evidence "shall not be admitted" unless the trial court determines that it is material to a fact at issue and that its probative

value is not outweighed by its inflammatory or prejudicial nature. MCL 750.520j(1); *People v Adair*, 452 Mich 473, 478-479; 550 NW2d 505 (1996). In applying this standard, trial courts are instructed to favor exclusion unless admission is necessary to protect a defendant's constitutional rights. *Hackett*, 421 Mich at 349. The statute also imposes mandatory procedural requirements. A defendant seeking to introduce such evidence must file a written motion and offer of proof within ten days of arraignment. MCL 750.520j(2); *Hackett*, 421 Mich at 350. The offer of proof must specifically demonstrate the relevance of the evidence to a material issue in the case. *Id*. Absent such a showing, the trial court is required to deny the motion. *Id*.; see also *People v Lucas (On Remand)*, 193 Mich App 298, 303; 484 NW2d 685 (1992).

Here, defendant failed to comply with these threshold requirements. The record establishes that he failed to timely file a notice. During trial, defense counsel attempted to introduce evidence showing that JC was sexually abused by her brother Lonny, to which the prosecutor objected. Defense counsel argued that JC opened the door to the challenged testimony by stating that her older brother, Joshua, seemed to know that "things were going on" between JC and defendant. Defendant failed to adequately explain why this evidence was relevant or how it opened the door to testimony that would otherwise be protected by the rape shield statute. Although the failure to comply with the notice provision does not automatically preclude admission, it is a significant factor weighing against admissibility, particularly where, as here, the lack of notice is coupled with the absence of an explanation of the evidence's relevance. *Lucas*, 193 Mich App at 302-303.

Even setting aside the procedural deficiency, defendant failed to establish that the evidence was substantively admissible. Defendant sought to admit evidence that JC had previously been sexually assaulted by her brother. However, such evidence does not fall within any of the statute's enumerated exceptions. The statute states, in relevant part:

> (1) Evidence of specific instances of the victim's sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall not be admitted under sections 520b to 520g1 unless and only to the extent that the judge finds that the following proposed evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value:

> (a) Evidence of the victim's past sexual conduct with the actor.

> (b) Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, or disease. [MCL 750.520j(1)(a) and (b).]

The evidence at issue in this matter did not involve prior sexual conduct with defendant, nor did it relate to the source of semen, pregnancy, or disease. Instead, defendant sought to use the evidence for impeachment and to undermine JC's credibility. But defendant failed to establish that the evidence was relevant to the question of JC's credibility. A complainant's sexual interactions with third parties, consensual or otherwise, is generally irrelevant to whether a defendant committed the charged assault. *Adair*, 452 Mich at 481. Moreover, such evidence is ordinarily inadmissible for impeachment purposes because it has no bearing on a witness's character for truthfulness. MRE 608; *Adair*, 452 Mich at 481. As our Supreme Court has explained, the rape-shield statute

specifically rejects the use of sexual history evidence to suggest consent or to attack credibility based on sexual behavior. *Hackett*, 421 Mich at 346-347.

Defendant also failed to establish that the evidence was admissible under a constitutionally required exception. For example, evidence of prior sexual conduct may be admitted where necessary to show bias, ulterior motive, or a prior pattern of false accusations. *Hackett*, 421 Mich at 348. No such showing was made here. Ultimately, defendant's theory that JC's alleged prior victimization somehow undermined her credibility or explained her allegations is precisely the type of generalized character or propensity reasoning that the rape-shield statute forbids. The mere existence of a prior assault does not establish bias, fabrication, or motive to lie. Without a specific link to a material issue in the case, the evidence lacks probative value. See *Adair*, 452 Mich at 481-483. Exclusion of the evidence did not violate defendant's constitutional right to present a defense. Although a defendant has a right to present relevant evidence, that right is subject to reasonable evidentiary restrictions. *People v Unger*, 278 Mich App 210, 249-250; 749 NW2d 272 (2008). Where evidence is only marginally relevant and highly prejudicial, as is typically the case with sexual history evidence involving third parties, its exclusion does not offend due process or the Confrontation Clause. *Hackett*, 421 Mich at 349. Defendant has failed to establish that the trial court abused its discretion in declining to admit the evidence.

## E. SENTENCING

Defendant argues that he is entitled to resentencing because the trial court improperly scored Offense Variables (OV) 11 and 13, resulting in an inflated minimum guidelines range. In the alternative, defendant contends that defense counsel rendered ineffective assistance by failing to object to the scoring errors at sentencing. We disagree.

"This Court reviews for clear error a trial court's findings in support of a particular score under the sentencing guidelines but reviews de novo whether the trial court properly interpreted and applied the sentencing guidelines to the findings." *People v Teike*, 348 Mich App 520, 525; 19 NW3d 733 (2023) (quotation marks and citation omitted). "Clear error exists when this Court is left with a definite and firm conviction that a mistake was made." *Id*. (quotation marks and citation omitted). The trial court's factual findings "must be supported by a preponderance of the evidence." *Id*. (quotation marks and citations omitted).

Defendant was assessed 50 points for OVs 11 and 13. OV 11 directs a trial court to assess 50 points if "[t]wo or more criminal sexual penetrations occurred". MCL 777.41(1)(a). The statute further provides that "all sexual penetrations of the victim by the offender arising out of the sentencing offense" must be counted. OV 13 concerns a "continuing pattern of criminal behavior." MCL 777.43(1). Fifty points are assessed if "[t]he offense was part of a pattern of felonious criminal activity involving 3 or more crimes against a person." MCL 777.43(1). The statute permits consideration of "all crimes within a 5-year period, including the sentencing offense . . . regardless of whether the offense resulted in a conviction." MCL 777.43(1)(2)(a).

In this matter, the record supports the trial court's scoring of both variables. JC testified to multiple distinct acts of penetration, including digital, oral, and penile-vaginal penetration occurring over an extended period of time. These acts arose out of the same course of conduct underlying the sentencing offense and therefore were properly counted under OV 11. See

MCL 777.41(2)(a). Because the evidence established more than one penetration, the assessment of 50 points was supported by a preponderance of the evidence and was not clearly erroneous.

The same record evidence established a pattern of criminal conduct sufficient to support the scoring of OV 13. JC described repeated sexual assaults occurring across multiple occasions and locations. These repeated acts constitute "crimes against a person" within the meaning of MCL 777.43 and demonstrate a continuing pattern of felonious behavior. See *People v Gibbs*, 299 Mich App 473, 487; 830 NW2d 821 (2013) (holding that multiple acts within a course of sexual abuse may establish a pattern under OV 13). The trial court was permitted to consider these acts regardless of whether they resulted in separate charges or convictions. MCL 777.43(2)(a). Accordingly, the scoring of OV 13 was also supported by the record.

Because the trial court properly scored OV 11 and OV 13, defendant cannot establish that the guidelines range was inaccurate or that resentencing is required. For the same reason, defendant's alternative claim of ineffective assistance of counsel necessarily fails, as counsel is not ineffective for failing to raise a meritless objection. *Ericksen*, 288 Mich App at 201. Defendant is not entitled to relief on this issue.

## F. NEW TRIAL

Lastly, defendant argues that the trial court abused its discretion by denying his motion for a new trial where the jury returned its guilty verdict late in the day rather than recessing and continuing deliberations the following morning. According to defendant, the timing of the verdict created an unacceptable risk that jurors were fatigued, rushed, or pressured to reach a decision, thereby undermining the reliability of the verdict and resulting in a miscarriage of justice. We disagree.

A trial court's decision on a motion for a new trial is reviewed for an abuse of discretion. *People v Cress*, 468 Mich 678, 691; 664 NW2d 174 (2003). Under MCR 6.431(B), a court may grant a new trial "if the verdict has resulted in a miscarriage of justice." Importantly, trial courts possess broad discretion in managing trial proceedings, including jury deliberations. See MCL 768.29; *People v Biddles*, 316 Mich App 148, 153; 896 NW2d 461 (2016) ("[T]he trial court has a duty to control trial proceedings in the courtroom and has wide discretion and power in fulfilling that duty.").

There is no per se rule requiring deliberations to cease at a particular hour or to resume the following day. Rather, the dispositive inquiry is "whether the instruction given [could] cause a juror to abandon his [or her] conscientious dissent and defer to the majority solely for the sake of reaching agreement[.]" *People v Walker*, 504 Mich 267, 278; 934 NW2d 727 (2019) (quotation marks and citation omitted; alterations in original). In this matter, the trial court stated:

> *The Court*: Ladies and Gentlemen, it's about 6:00. It's been a long day. Probably a good time to give you a break and let you come back in the morning, unless you want to stay tonight.
>
> But listen, I—[it] makes no difference to me. I—I've been here until two in the morning on occasion. So I—I can I can stay as long as you want. I'm seeing a lot of heads nodding affirmatively when I say maybe we ought to call it a day.

-10-

So I will take your cue—

*Unidentified Speaker*: Or do you want to talk about it?

*The Court*: —from that.

Or do you—I heard somebody say do you want to talk about it. If—if you want to go in and confer whether you want to stay or want to go, that's fine with me.

But I don't want to—The point is, I don't want to know anything about where you are in your voting, and I don't want to put any pressure on you one way or the other.

I—I—if you want to go in and confer about it and let the bailiff know what your preference is, that's okay with me.

Well, why don't you—why don't you let them have a—

*The Clerk-Bailiff*: Okay.

*The Court*: —have a conference about it, and let us know.

We'll stay here as long as you want to stay. Okay? It's entirely up to you.

There is no indication that the trial court imposed a deadline, pressured the jury to reach a verdict, or otherwise engaged in coercive conduct. The mere fact that the jury reached its verdict late in the day does not establish that the jurors were unable to deliberate fairly or thoughtfully. Absent evidence of "pressure, threats, embarrassing assertions, or other wording that would cause this Court to feel that it constituted coercion," *People v Hardin*, 421 Mich 296, 315; 365 NW2d 101 (1984) (quotation marks and citation omitted), the timing of the verdict alone is insufficient to demonstrate a miscarriage of justice.

Moreover, courts presume that jurors follow their instructions and are capable of assessing their own ability to continue deliberating. See *People v Graves*, 458 Mich 476, 486; 581 NW2d 229 (1998). If the jurors had felt unable to proceed due to fatigue or other concerns, they could have indicated as much to the court. The record does not reflect any such concern, nor does it show that defense counsel objected to the continuation of deliberations or requested that the jury be excused for the evening.[3] Ultimately, in the absence of any record evidence that the jury was

---

[3] Indeed, defense counsel may have been the "unidentified speaker" who asked the jurors if they wanted to "talk about" ending deliberations for the day. However, we note that a discrepancy exists in the record that makes it unclear whether that statement was attributable to defense counsel. In the transcript submitted in connection with defendant's motion for a new trial, the statement is expressly attributed to defense counsel. However, in the original trial transcript, the same statement is attributed only to an "unidentified speaker." Because the record does not otherwise

coerced, improperly influenced, or unable to deliberate effectively, defendant has failed to establish that the verdict resulted in a miscarriage of justice under MCR 6.431(B). The trial court's decision to accept the verdict when reached, rather than require the jury to return the following day, falls squarely within its broad discretion over the conduct of trial proceedings. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for a new trial.

Affirmed.

/s/ Christopher M. Murray
/s/ James Robert Redford
/s/ Michelle M. Rick

---

resolve this inconsistency, and because the statement is not material to our resolution of the issues on appeal, we decline to rely on it.